**In re MATTRESS N MORE, INC., Debtor.**

**Richard D. Ellenberg, as Trustee of Mattress N More, Inc., Plaintiff,**

v.

**Amjad Waliagha, a/k/a Amjad W. Agha, et al., Defendants.**

**Bankruptcy No. A97–72771–JB. Adversary No. 98–6027.**

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

Nov. 23, 1998.

Richard D. Ellenberg, Atlanta, GA, for plaintiff.

James C. Cifelli, Atlanta, GA, for defendants.

## *ORDER*

JOYCE BIHARY, Bankruptcy Judge.

This adversary proceeding is before the Court on the defendants' motion to dismiss one count of the complaint. The question presented by the motion is whether a bankruptcy trustee of a corporate debtor has standing to assert claims to pierce the corporate veil of the debtor to recover amounts from the debtor's shareholder and related corporate entities sufficient to pay the debts of the debtor.

### I. *The Procedural Background*

The trustee of debtor Mattress N More, Inc., Richard D. Ellenberg, ("trustee") filed an adversary proceeding against Amjad Waliagha, also known as Amjad W. Agha ("Waliagha"), and nineteen (19) corporate defendants.[1] Mr. Waliagha owns 100% of the stock of the debtor and 100% of the stock of these 19 corporate defendants.

The trustee's original complaint, filed January 15, 1998, was pled in three counts. The first count was labeled "Joint and Several Liability to Creditors," the second count alleged a trademark violation by virtue of the defendants' use of the trade name and trademark "Mattress N More," and the third count alleged improper transfers from the debtor to Mr. Waliagha in the amount of $155,673.00.

On March 12, 1998, the defendants filed a motion to dismiss Count I of the trustee's complaint. In this motion, defendants argue that the claims pled in Count I were in the nature of alter ego claims and that the trust-

---

**1.** The corporate defendants are: Norcross Furniture Company, Inc., Snellville Mattress Company, Inc., Norcross Mattress Company, Inc., Midtown Mattress Company, Inc., Duluth Mattress Company, Inc., Decatur Mattress Company, Roswell Mattress Company, MNM 1, Inc., MNM 2, Inc., MNM 3, Inc., MNM 4, Inc., MNM 5, Inc., Snellville Mattress Co., Orange Park Mattress Company, Regency Mattress Co., Sarasota Mattress, Inc., University Mattress Co., Inc., Brandenton Mattress Co., Inc., and Zena International, Inc. In the answer to the complaint, the defendants state that eight (8) of these corporations are no longer in operation. They are Midtown Mattress Company, Inc., Roswell Mattress Company, MNM 1, Inc., MNM 2, Inc., MNM 3, Inc., MNM 4, Inc., MNM 5, Inc., Sarasota Mattress, Inc., and University Mattress Company, Inc.

ee did not have standing to assert an alter ego claim. The trustee filed a reply to the motion to dismiss on April 6, 1998. In the meantime, at a pretrial conference held on April 2, 1998, the Court gave the plaintiff additional time for discovery and time in which to file an amended complaint clearly setting forth the factual allegations and claims. Defendants were directed to review the amended complaint when it was filed and then to file a pleading, advising the Court whether defendants' motion to dismiss Count I was still appropriate.

The trustee filed an amended complaint on August 21, 1998, and the defendants filed a notice on September 4, 1998 advising the Court that it was appropriate to consider the defendants' motion to dismiss Count I. Neither the defendants nor the plaintiff trustee have filed any additional briefs or memoranda pertaining to the motion to dismiss, even though the trustee has now filed an amended complaint in which Count I has been revised. For purposes of this motion, the Court will consider the defendants' motion to pertain to Count I of the trustee's amended complaint.

## II. *What claims are the defendants seeking to dismiss?*

The title of Count I now reads "Piercing the Corporate Veils–Joint and Several Liability of Each Defendant." In Count I, the trustee alleges that the 19 corporate defendants are wholly owned by defendant Waliagha, that Mr. Waliagha is the president and chief executive officer of all these defendants, that the corporate defendants operate as one business with the objective of selling mattresses and related products, and that each of the corporate defendants has been operated by Mr. Waliagha in a manner to abuse the corporate structures and to constitute a fraud upon creditors. The trustee further alleges that the debtor was used to order and manufacture the inventory for all the corporate defendants and to make other joint purchases for all the corporate defendants, but that the common expenses were not allocated among the corporate defendants and were not paid for by the corporate defendants. The trustee alleges that control over the corporate defendants was exercised in a central location, that the checkbooks for the corporate defendants were kept and written at one location, and that all checks were signed by Mr. Waliagha. The amended complaint alleges that for the most part, no corporate formalities have been observed and that the stated purpose of using separate legal entities was to protect assets from creditors, that most of these entities did not file any tax returns for 1996 and 1997, and that Mr. Waliagha took funds from each corporate defendant's account when it had funds and deposited funds when it needed funds, thus commingling funds. The trustee alleges that each defendant should be jointly and severally liable for all sums owed by debtor to creditors, including administrative expenses. The trustee alleges that this sum is not less than $350,000.00.

Count I also contains specific allegations of wrongdoing with respect to defendants Decatur Mattress Co., Norcross Mattress Co., and Zena International, Inc. The trustee alleges that debtor transferred all of its functions to Decatur Mattress Co. and Norcross Mattress Co. and that these two defendants took over the location, telephone numbers, employees, vehicles, business opportunities and business relations of the debtor. In addition, Decatur Mattress Co. and Norcross Mattress Co. are alleged to have taken all of the debtor's equipment, including equipment purchased shortly before debtor's assets were transferred. The complaint further alleges that Zena International, Inc. has overcharged debtor for alleged services.

## III. *Legal Analysis*

The threshold issue is whether the causes of action alleged in Count I belong to the bankruptcy estate. At the outset, it is important to note that Count I, as amended, contains more than just a claim to pierce the corporate veil. It also contains claims against defendants Decatur Mattress Co., Norcross Mattress Co., and Zena International, Inc. for improper transfers and improper charges. These claims clearly belong to the estate, are property of the estate and are appropriate subjects for an action brought by the trustee. Thus, none of these claims should be dismissed.

Whether the alter ego claims can be asserted by a bankruptcy trustee is more com-

plicated. Defendants argue that the trustee has no standing to assert an alter ego claim under Georgia law, and that any such claim only belongs to individual creditors. Plaintiff has not contested the proposition that a trustee has no authority to assert alter ego claims under § 544 of the Bankruptcy Code.[2] *See Moore v. Kumer (In re Adam Furniture Indus., Inc.)*, 191 B.R. 249, 256–257 (Bankr. S.D.Ga.1996); *Stamps v. Knobloch (In re City Communications, Ltd.)*, 105 B.R. 1018, 1020–1021 (Bankr.N.D.Ga.1989). The parties disagree, however, as to whether the trustee has standing under § 541 of the Bankruptcy Code to assert an alter ego claim.

Section 541 defines property of the bankruptcy estate. It includes whatever legal and equitable interests the debtor had in property as of the filing of the bankruptcy petition. Once the bankruptcy petition has been filed, property rights belonging to a debtor under state law become assets of the estate. *Butner v. United States*, 440 U.S. 48, 54, 99 S.Ct. 914, 917, 59 L.Ed.2d 136 (1979). The trustee has the duty to marshal the debtor's property for the benefit of the estate and the right to sue for recovery of all property of the estate. There are a number of Circuit Court cases considering the standing of various parties to bring an alter ego claim, once a bankruptcy has been filed. In all of these cases, the courts look to state law to decide whether a trustee has standing under § 541 of the Bankruptcy Code to pursue an alter ego claim.

The Second, Fourth, Fifth, and Seventh Circuits have all found that general alter ego claims become property of the bankruptcy estate and may be pursued by the trustee. In *S.I. Acquisition, Inc. v. Eastway Delivery Service, Inc. (In re S.I. Acquisition, Inc.)*, 817 F.2d 1142 (5th Cir. 1987), the issue was whether a creditor's action against the debtor's principal based on the alter ego doctrine was stayed by the automatic stay and § 362 of the Bankruptcy Code. The Fifth Circuit found that it was, because § 362(a)(3) applies to a cause of action that belongs to the debtor under either state or federal law. *Id.* at 1153. The Court analyzed whether the cause of action based on an alter ego theory belongs to the corporation under Texas law and found that it did. *Id.* Seven years later, in *Schertz–Cibolo–Universal City, Independent School District v. Wright (In re Educators Group Health Trust)*, 25 F.3d 1281 (5th Cir.1994), the Fifth Circuit considered whether the trustee or creditors had authority to pursue various causes of action asserted against principals of the debtor. Once again, the analysis of whether a particular state cause of action belonged to the estate depended on whether, under applicable state law, the debtor could have raised the claim as of the commencement of the case. *Id.* at 1284. The Court found that claims involving negligent management, conspiracy to negligently manage, conspiracy to make the debtor insolvent and to commit fraud on the debtor, and the claim that the defendants were unjustly enriched with funds of the debtor all alleged a direct injury to the debtor. *Id.* at 1286. The Court also held that to the extent the complaint alleged a direct injury to a particular creditor, that claim would belong solely to the creditor.

The standing issue arose in the Seventh Circuit case of *Koch Refining v. Farmers Union Central Exchange, Inc.*, 831 F.2d 1339 (7th Cir.1987), *cert. denied*, 485 U.S. 906, 108 S.Ct. 1077, 99 L.Ed.2d 237 (1988), in the context of a dismissal of a lawsuit brought by creditors of the debtor who sought a declaration that member-owners of the debtor were the alter ego of the debtor. The Circuit Court affirmed the dismissal of the lawsuit by the creditors, holding that the claims belong to the trustee. The Court examined the alter ego law of both Illinois and Indiana and concluded that the trustee could and should bring the alter ego claims.

In the Fourth Circuit case of *Steyr–Daimler–Puch of America Corp. v. Pappas*, 852 F.2d 132 (4th Cir.1988), the Court affirmed the dismissal of a lawsuit brought by a credi-

---

**2.** Section 544 contains certain avoiding powers of the trustee. Section 544(a) is often referred to as the "strong arm" statute and gives the trustee the status of certain types of claimants as of the time of bankruptcy. Section 544(b) allows the trustee to avoid a transfer that is voidable by an unsecured creditor under nonbankruptcy law.

tor against a corporate debtor's alter egos, since the trustee had executed a general release which barred any claims against the defendants which the trustee brought or could have brought. *Id.* at 135. The District Court found that the trustee had brought, compromised and released the alter ego claim under the trustee's § 544 powers. On appeal, the Circuit Court affirmed for a different reason, finding that an alter ego claim, under Virginia law, is property of the corporation so that it becomes property of the estate over which the trustee has control under § 541.

The Second Circuit decided two cases on this issue, *Kalb, Voorhis & Co. v. American Financial Corp.,* 8 F.3d 130 (2d Cir.1993) and *St. Paul Fire & Marine Insurance Co. v. PepsiCo,* 884 F.2d 688 (2d Cir.1989). In *Kalb, Voorhis,* a creditor sued a former controlling stockholder, claiming that the debtor and the stockholder were alter egos and that the corporate veil between the two should be pierced. When the debtor learned of the creditor's action, the debtor asserted its rights to bring a veil piercing action. The debtor then negotiated a settlement, but the creditor objected to the settlement, contending that it, rather than the debtor or a trustee, had the right to assert a veil piercing claim. The Court looked to Texas law and, relying on *S.I. Acquisition,* held that under Texas law, the debtor or the bankruptcy trustee has the exclusive standing to assert veil piercing claims on behalf of a bankrupt corporation, because these claims are property of the estate. 8 F.3d at 133. In *St. Paul,* the Court looked to the alter ego doctrine in Ohio and held that a corporation would be able to assert an alter ego cause of action against its parent corporation, so that the cause of action was property of the estate. 884 F.2d at 700.

Curiously, the defendants in the case at bar did not cite or seek to distinguish any of the above Circuit Court cases. Instead, they rely on *Mixon v. Anderson (In re Ozark Restaurant Equipment Co., Inc.),* 816 F.2d 1222 (8th Cir.1987), *cert. denied sub nom. Jacoway v. Anderson,* 484 U.S. 848, 108 S.Ct. 147, 98 L.Ed.2d 102 (1987) and *Spartan Tube and Steel, Inc. v. Himmelspach (In re RSC*

*Engineered Products),* 102 F.3d 223 (6th Cir. 1996). In *Ozark,* the Eighth Circuit held that the trustee did not have standing to bring an alter ego action against the principals of the corporation. 816 F.2d at 1230. Looking at state law, the Court held that the corporate entity is disregarded under Arkansas law only if it has been abused to the detriment of a third person and that the alter ego claim is personal to the corporate creditors rather than to the corporation itself. *Id.* at 1225. In *RCS,* the Sixth Circuit looked at Michigan law and concluded that in Michigan, an alter ego claim could not be brought in anything other than third-party situations and that under Michigan law, a corporation does not have standing to sue its shareholders under an alter ego theory. 102 F.3d at 226.

The analysis of state law by the Circuit Courts which held that the trustee had standing to file an alter ego claim is not particularly helpful. After the Seventh Circuit decided *Koch,* the Supreme Court of Illinois disagreed with the Seventh Circuit and held that in Illinois, a corporation may not bring an alter ego action against its parent shareholder, piercing the corporate veil in the process. *Selcke v. Hartford Fire Ins. Co. (In re Rehabilitation of Centaur Ins. Co.),* 158 Ill.2d 166, 198 Ill.Dec.404, 632 N.E.2d 1015, 1018 (1994). In *Centaur Insurance,* the court declined to adopt the reasoning in *Koch* and stated very clearly that *Koch* 's interpretation of Illinois alter ego law is not the law in Illinois. *Id.* at 309, 632 N.E.2d at 1020. In *Steyr–Daimler–Puch,* the Fourth Circuit's analysis of Virginia law is in one brief paragraph. The Court held that, under Virginia law, "a corporation has an equitable interest in the assets of an alter ego because the corporation and the alter ego are 'one and the same'." For this proposition, the Court cited one Virginia case from 1935, *Pepper v. Dixie Splint Coal Co.,* 165 Va. 179, 181 S.E. 406 (1935). This 1935 case is about an individual creditor who was defrauded and about transfers to a new corporation and improper dividends paid to shareholders. It does not support the theory that a corporation can pierce its own corporate veil.

In both *St. Paul* and *S.I. Acquisition,* the courts found nothing in Ohio or Texas law,

respectively, suggesting that a corporation could or could not bring an alter ego action against its parent. And yet, because the purpose of the doctrine is to prevent fraud and injustice, the courts held that they believed the state law *would* allow such a claim. These courts do not appear to be saying what the law is, but what they believe it should be.

The parties agree that here we must look at Georgia law to decide whether the trustee has standing to pursue an alter ego claim. There are two cases decided by Bankruptcy Courts in Georgia on this issue, *In re City Communications, Inc.*, 105 B.R. 1018 and *In re Adam Furniture*, 191 B.R. at 249. In *City Communications*, the trustee of a debtor limited partnership sued the shareholders of the corporate general partner, alleging, among other things, that the defendants were liable for all claims against the debtor as general partners of the debtor because the shareholders were alter egos of the corporate general partner. The Court reviewed the alter ego doctrine in Georgia and concluded that Georgia law is similar to the state law in *Koch* and *S.I. Acquisition*. 105 B.R. at 1022.

> As with the state laws analyzed in *Koch* and *S.I. Acquisition*, [sic] the emphasis under Georgia law appears to be equitable concerns rather than the specific relationships between the alter ego and the creditors. The alter ego doctrine focuses on the overall behavior of the corporation and the alleged alter egos as shareholder derivative actions focus on the continuing course of conduct of the corporate officers and directors. Therefore, as in *Koch* and *SI Acquisition*, under Georgia law, an alter ego claim is property of the estate under § 541 and can be asserted by the Trustee.

*Id.*

In the *Adam Furniture* case, the Court agreed with *City Communications* and held that "an alter ego action under Georgia law is primarily a suit in equity that would permit a debtor corporation to proceed against its own principals, . . . [and] the trustee succeeds to such interest of the estate and has standing to bring the alter ego action." 191 B.R. at 255.

■ Defendants are correct that no Georgia court has ever addressed whether an alter ego claim may be brought by the corporation itself. It does appear that all the Georgia alter ego cases involve claims asserted by creditors. This makes sense, since the doctrine is largely a debt collection device. After reviewing the principles of corporate jurisprudence and dozens of Georgia cases involving veil-piercing claims, the Court concludes that the Supreme Court of Georgia would probably not allow a corporation to assert a claim to pierce its own corporate veil.[3] There is something anomalous about a corporation, which is created to protect its shareholders from the liability of the enterprise, asserting a claim to destroy the very protection for which it was created. Furthermore, it is relatively difficult to pierce the corporate veil in Georgia. STEPHEN B. PRESSER, PIERCING THE CORPORATE VEIL, § 2.11, at 2–91 (1998). The trustee unquestionably has standing to sue these defendants for any improper transfers from the debtor, and to sue any officer, shareholder or director for breach of fiduciary duties and negligent management. *See Hickman v. Hyzer*, 261 Ga. 38, 401 S.E.2d 738 (1991). However, the Court is not persuaded that a trustee can destroy the corporate fiction to make shareholders and related entities liable for all the debtor's debts and the trustee's administrative expenses.[4]

Finally, from a policy perspective, perhaps a trustee should be able to pursue general

---

**3.** It is difficult to predict what the state law is or would be when there is no state court case on point. As a trial court, the Bankruptcy Court does not have the ability to certify a question to the Supreme Court of Georgia. GA. CONST.. art. VI, § VI, ¶ VI, R.SUP.CT.GA. 46. This case may present an appropriate question for certification, should it reach the federal appellate courts.

**4.** For the trustee to prevail on a claim that the defendants should be liable for all of the debtor's debts and administrative expenses, the trustee would probably have to have all these entities in bankruptcy and then move for substantive consolidation, with notice to all creditors of all affected entities. Substantive consolidation is a process whereby the assets and the liabilities of different entities are combined and treated as if belonging to a single entity. It is usually a doctrine used to combine the assets of different debtor corporations and their respective debtor affiliates. See Mark L. Prager & Jonathan A. Backman, *Pursuing Alter–Ego Liability Against*

alter ego claims as a representative of the estate. However, there is no statutory basis in the Bankruptcy Code for a trustee to do so, and it is doubtful that the Supreme Court of Georgia would allow a corporation to pierce its own veil. It has been suggested that only amendments to § 544 of the Bankruptcy Code would solve the problem, by allowing the trustee to pursue creditor damage claims such as alter ego actions. John D. Wilmore, *The Bankruptcy Trustee: Can an Alter Ego Sue in Alter Ego?*, 20 Ca. Bankr.J. 155 (1992), Bryan D. Hull, *A Void in Avoidance Powers? The Bankruptcy Trustee's Inability to Assert Damages Claims on Behalf of Creditors Against Third Parties*, 46 U.Miami L.Rev. 263 (1991). These suggestions are valid, and it is Congress who should address the balance to be struck between the goals of bankruptcy legislation and creditor's rights and the policies of economic expansion which lay behind the state law doctrines of limited liability.

In accordance with the above reasoning, defendants' motion to dismiss Count I of plaintiff's amended complaint is DENIED in part and GRANTED in part. It is denied insofar as the allegations in Count I contain claims for fraudulent conveyances or other specific improper or avoidable transfers from the debtor, looting, and breaches of fiduciary duty. The motion to dismiss is granted to the extent that Count I asserts a claim by the trustee to pierce the debtor's corporate veil and hold the defendants liable for all of the debtor's debts and the trustee's administrative expenses.

IT IS SO ORDERED.

*Non–Bankrupt Third Parties: Structuring a Comprehensive Conceptual Framework,* 35 St.