**In re ICARUS HOLDINGS, LLC, f/k/a Piedmont Hardwood Flooring, LLC, Debtor.**

**Edwards Wood Products, Inc., and Icarus Holdings, LLC, f/k/a Piedmont Hardwood Flooring, LLC, Plaintiffs,**

**v.**

**Bert F. Thompson, Southern Wood Services, LLC, and Thompson Land and Timber Company, LLC., Defendants.**

**Bert F. Thompson and Icarus Holdings, LLC, f/k/a Piedmont Hardwood Flooring, LLC, Plaintiffs,**

**v.**

**Baillie Lumber Company, LP, Defendant.**

**Bankruptcy No. 01–55662–JDW.**

**Adversary Nos. 02–5081, 02–5069.**

United States Bankruptcy Court, M.D. Georgia, Macon Division.

Oct. 10, 2002.

Grant T. Stein, Sean C. Kulka, Atlanta, GA, for Debtor in Possession.

Hubert C. Lovein, Jr., Macon, GA, for Bert F. Thompson, Southern Wood Services, LLC, and Thompson Land & Timber Co.

J. Ellsworth Hall, IV, John F. Kennedy, Macon, GA, for Edwards Wood Products, Inc.

Ed S. Sell, III, Tilman E. Self, III, Macon, GA, for Baillie Lumber Co., LP.

Ward Stone, Jr., Macon, GA, for the Official Committee of Unsecured Creditors.

## MEMORANDUM OPINION

JAMES D. WALKER, Jr., Bankruptcy Judge.

This matter comes before the Court on Plaintiff Bert F. Thompson's Complaint for Injunctive Relief and on Plaintiff Edwards Wood Products, Inc.'s Complaint for Damages. Both proceedings have raised the issue of who may sue the principal of a debtor in possession under an alter ego theory. This is a core matter within the meaning of 28 U.S.C. § 157(b)(2)(O). After considering the pleadings, the evidence, the briefs, and the applicable authorities, the Court enters the following decision in conformance with Federal Rule of Bankruptcy Procedure 7052.

### Undisputed Facts

For purposes of this Opinion, the Court has consolidated two cases with identical facts that raise the same determinative issue. The only material difference between the two cases is their procedural posture. In the case of Edwards Wood Products, Inc., the creditor filed an alter ego suit against Bert F. Thompson, principal of Icarus Holdings, LLC ("Debtor," "Debtor in Possession," or "DIP"), in state court, the suit was removed to this Court, and Edwards now seeks to remand the suit (the "Edwards case"). In the case of Baillie Lumber Company, LP, Thompson is seeking an injunction to prevent Baillie from proceeding with a similar alter ego suit it filed against him in state court (the

"Baillie case"). Debtor has intervened in both cases.

The Court asked the parties to file cross motions for summary judgment on the issue of whether or not an alter ego claim against the principal of a corporate debtor is property of the estate and, thus, can be brought only by the trustee or DIP. The statements of undisputed material facts submitted with the motions were indistinguishable and provide as follows:

Debtor operated as a national manufacturer and distributor of a variety of unfinished solid hardwood flooring, primarily for residential use. Prior to Debtor's bankruptcy filing, Edwards and Baillie (the "Creditors") sold lumber to Debtor for which Debtor has not paid.

Also prior to the filing, Debtor's principal member and former president and manager, Thompson, engaged in certain alleged financial irregularities that adversely impacted Debtor's liquidity. These irregularities included allegedly using Debtor's assets and resources, including Debtor's employees and equipment, to subsidize the construction and improvement of Thompson's hunting lodge in Camden County, Georgia. Additionally, Thompson used Debtor's assets to fund the operation of Southern Wood Services, LLC, a separate and affiliated company also owned by Thompson. Thompson no longer is involved in the management of Debtor.

Debtor filed a Chapter 11 petition on December 17, 2001. Pursuant to Sections 1107 and 1108 of the Bankruptcy Code, Debtor continues to operate its business and manage its property as Debtor in Possession.[1]

On December 28, 2001, Debtor filed an adversary proceeding in this Court against Thompson and against Thompson Land and Timber, LLC, a company partially owned by Thompson. The complaint asserts, among other things, that Thompson's financial irregularities and prepetition transfers were fraudulent transfers and that the entities, including Thompson, holding the transferred property do so in constructive trust for Debtor. The adversary proceeding was filed for the primary purpose of filing a *lis pendens* on the Camden County property. Debtor did not specifically allege an alter ego or piercing the corporate veil cause of action against Thompson or Thompson Land and Timber in the complaint.

On January 11, 2002, the office of the United States Trustee for the Middle District of Georgia, Macon Division, appointed the Official Committee of Unsecured Creditors (the "Committee"). Edwards and Baillie are both members of the Committee.

Since the petition date, the Committee, Debtor, and Thompson have engaged in settlement negotiations. While a binding settlement agreement has not been executed, the Committee, Debtor, and Thompson have agreed orally to settle various disputes, including Debtor's adversary proceeding against Thompson and any alter ego claims that Debtor or the Committee may be entitled to assert against Thompson. The proposed settlement agreement provides that in settlement of all claims against Thompson, he shall pay to Debtor's estate $900,000 if paid on or before February 15, 2003, or $950,000 if paid after February 15, 2003, and that Thompson shall remain liable on a personal guaranty of a debt not to exceed $1,247,000 owed by

---

1. Because the rights, powers, and duties of a debtor in possession are essentially the same as those of a trustee pursuant to 11 U.S.C. § 1107, the terms "trustee" and "debtor in possession" are used interchangeably throughout this Opinion.

Southern Wood Services to Debtor's estate.

In January 2002, Thompson Land and Timber sold the Camden County property, and net proceeds of approximately $540,000 were paid into the registry of the Court. Under the terms of the proposed settlement agreement, this $540,000 will be paid to Debtor's estate upon approval of the settlement by the Court and will be applied to reduce Thompson's obligations under the proposed settlement agreement.

On January 8, 2002, Baillie filed suit against Thompson, individually, in the State Court of Bibb County, Georgia, alleging, among other things, that Thompson is the alter ego of Debtor and, therefore, is personally liable for Debtor's debts, including any indebtedness owed by Debtor to Baillie. On April 17, 2002, Thompson filed a Complaint for Injunctive Relief against Baillie in this Court. The complaint asserts that Baillie's alter ego claim against Thompson is property of Debtor's bankruptcy estate. It also alleges that, to the extent Baillie is successful in its state court action, Thompson will be unable to satisfy his obligations under the proposed settlement agreement.

On April 3, 2002, Edwards filed suit against Thompson, Southern Wood Services, and Thompson Land and Timber in Bibb County Superior Court. The complaint alleges, among other things, that as the alter ego of Debtor, Thompson is personally liable for Debtor's debts, including any indebtedness owed by Debtor to Edwards. Additionally, the complaint alleges that Southern Wood Services is the alter ego of Debtor and, therefore, is liable for Debtor's debts, including any indebtedness owed by Debtor to Edwards. The complaint also included an allegation that property held by Thompson Land and Timber was held in constructive trust for the benefit of Edwards. The defendants in the state court action answered, denying that Edwards was entitled to the relief requested. On May 1, 2002, the defendants removed the state court action to this Court. Edwards has filed a motion to remand the case to state court.

Thompson, Debtor, the Committee,[2] Southern Wood Services, and Thompson Land and Timber contend that the alter ego claim against Thompson is property of the bankruptcy estate; thus, only Debtor in Possession has standing to bring an alter ego claim. Baillie and Edwards contend that their state court claims are not property of Debtor's estate and that they are not attempting to recover property of or money owed to the estate, so that neither Debtor nor the Creditor's Committee has the authority to settle their state court claims.

## Conclusions of Law

Summary judgment is governed by Federal Rule of Civil Procedure 56, made applicable to bankruptcy through Bankruptcy Rule of Procedure 7056. Under Rule 56, a party is entitled to summary judgment when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *McCaleb v. A.O. Smith Corp.*, 200 F.3d 747, 750 (11th Cir. 2000). The parties in this case concede that no material facts are in dispute. The Court agrees. Thus, the Court may proceed to the legal question.

The issue before the Court is whether or not a suit to pierce the corporate veil under an alter ego theory is property of a corporate debtor's bankruptcy estate sub-

**2.** The Committee filed an *amicus curiae* brief in the Baillie case.

ject to the exclusive control of the trustee. The Creditors argue that a trustee can only sue to recover money owed to the estate; it cannot sue to recover debts owed to individual creditors. Thompson and Debtor argue that the alter ego claim is property of the estate, and the trustee has exclusive standing to pursue such a claim if (1) under Georgia law Debtor could have asserted an alter ego claim to pierce its own veil, and (2) the claim is a general one that could have been brought by any creditor. Thompson and Debtor further contend that the trustee has standing to pursue alter ego claims under Section 544[3] of the Bankruptcy Code. In the alternative, Thompson and Debtor argue that the Court may use its Section 105(a)[4] power to enjoin the Creditors from prosecuting alter ego actions against Thompson.

■ The Court holds that under Georgia law, the alter ego claim asserted by the Creditors is property of the estate that Debtor in Possession has exclusive standing to pursue.

■ All parties correctly assert that this question is answered by reference to state law regarding who can bring an alter ego claim. Section 541 of the Bankruptcy Code defines property of the estate to include "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C.A. § 541(a)(1) (West 1993). This includes causes of action. 5 Collier on Bankruptcy ¶ 541.08 (15th ed. rev.2002). Whether or not an interest falls within the scope of Section 541 is a federal question answered by reference to the relevant nonbankrupt-

cy law. *Charles R. Hall Motors, Inc. v. Lewis (In re Lewis)*, 137 F.3d 1280, 1283 (11th Cir.1998) (citing *Southtrust Bank of Ala. v. Thomas (In re Thomas)*, 883 F.2d 991, 995 (11th Cir.1989)). *See also Butner v. United States*, 440 U.S. 48, 54, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979).

Several circuit courts have considered whether an alter ego claim is property of the estate and have reached different results due to variations in state law. However, the courts' reasoning begins with the same premise: If the debtor could have brought the suit outside of bankruptcy then the claim becomes property of the estate assertable by the trustee.

For example, in *Mixon v. Anderson (In re Ozark Restaurant Equipment Co., Inc.)*, 816 F.2d 1222 (8th Cir.1987), a Chapter 7 case involving an Arkansas corporation, the trustee brought an alter ego action on behalf of the creditors. *Id.* at 1223. The court held that the trustee had no standing to bring the suit because it was not an interest of the debtor. *Id.* at 1225–26. The court agreed that "whenever a cause of action 'belongs' to the debtor corporation, the trustee has the authority to pursue it in bankruptcy proceedings." *Id.* at 1225. However, Arkansas law requires that a third party be harmed by disregard of the corporate form. *Id.* Because of this third party requirement, the court concluded that under Arkansas law, a corporation could not pierce its own veil. *Id.* Thus, the alter ego claim did not become property of the estate assertable by the trustee.[5] *Id.* at 1226. However, the court

---

**3.** Section 544 allows the trustee to step into the shoes of a creditor to avoid certain transfers. 11 U.S.C.A. § 544 (West 1993 & Supp. 2002).

**4.** "The court may issue any order, process, or judgment that is necessary or appropriate to

carry out the provisions of this title." 11 U.S.C.A. § 105(a) (West 1993).

**5.** *See also Spartan Tube & Steel, Inc. v. Himmelspach (In re RCS Eng'd Prods. Co., Inc.)*, 102 F.3d 223, 227 (6th Cir.1996) ("Since a subsidiary may not bring an alter ego claim against its parent company under Michigan

acknowledged that in other states, the law could allow a corporation to pierce its own veil. *Id.* n. 7.

The court reached a different result by following similar reasoning in *S.I. Acquisition, Inc. v. Eastway Delivery Service, Inc. (Matter of S.I. Acquisition, Inc.)*, 817 F.2d 1142 (5th Cir.1987). The creditor filed an alter ego suit against the principal of the debtor. After the debtor filed a Chapter 11 petition, it claimed that the creditor's suit violated the automatic stay, even though the debtor had been severed from the case and was not a party to the suit. *Id.* at 1144–45. The court found that under Texas law a corporation could pierce its own corporate veil because "the predominate policy of Texas alter ego law is that the control entity that has misused the corporation form will be held accountable for the corporation's obligations." *Id.* at 1152. As a result, the court concluded that the alter ego action was property of the estate, and any such suits by creditors ran afoul of the automatic stay.[6] *Id.* at 1153. In addition, the court noted that its decision furthered a policy underlying the Bankruptcy Code because, if the creditor's alter ego action were not stayed, it would "promote the first-come-first-served unequal distribution dilemma that the Bank-

ruptcy Code ... sought to prevent." *Id.* at 1153–54.

The Eleventh Circuit Court of Appeals has applied similar reasoning in *E.F. Hutton & Co., Inc. v. Hadley*, 901 F.2d 979 (11th Cir.1990). Although *Hutton* did not deal with veil piercing, it did question whether the bankruptcy trustee could assert causes of action held by creditors. The debtor was a dealer in mortgage securities, which it purchased through a margin account at E.F. Hutton. In the event the balance on the margin account remained unpaid, E.F. Hutton was contractually authorized to sell the securities purchased on margin and to apply the proceeds to the balance. The debtor engaged in a scheme in which it bought securities for its customers through its margin account, but rather than applying the money paid by the customers to its margin balance, the debtor diverted the funds to other purposes. Because of the resulting unpaid balance on the margin account, E.F. Hutton sold the securities for which the debtor's customers had paid in full. After the debtor filed for bankruptcy, the bankruptcy trustee sued E.F. Hutton for, among other things, conversion of the securities. E.F. Hutton argued that the trustee had no standing to sue because the debtor did not have a

---

law, the claim does not become the property of the [subsidiary's bankruptcy] estate ....'"). *Compare Williams v. California 1st Bank*, 859 F.2d 664, 667 (9th Cir.1988) (denying the trustee standing to pursue a securities fraud action on behalf of creditors, in part, because the debtor "has no claim of its own that it could press against the defendant.").

**6.** *See also Phar–Mor, Inc. v. Coopers & Lybrand*, 22 F.3d 1228, 1240 n. 20 (3d Cir.1994) ("It may seem strange to allow a corporation to pierce its own veil .... In some states, however, piercing the corporate veil and alter ego actions are allowed to prevent unjust or inequitable results; they are not based solely on a policy of protecting creditors."); *Kalb, Voorhis & Co. v. American Fin. Corp.*, 8 F.3d

130, 132 (2d Cir.1993) ("If under governing state law the debtor could have asserted an alter ego claim to pierce its own corporate veil, that claim constitutes property of the bankrupt [sic] estate and can only be asserted by the trustee or the debtor-in-possession."); *Steyr–Daimler–Puch of Am. Corp. v. Pappas*, 852 F.2d 132, 135 (4th Cir.1988) ("[A]n alter ego claim, under Virginia law, is property of the corporation so that it becomes property of the bankruptcy estate over which the trustee has control ...."); *Koch Refining v. Farmers Union Cent. Exch., Inc.*, 831 F.2d 1339, 1346 (7th Cir.1987) ("[U]nder Illinois and Indiana law as well, a bankruptcy trustee can bring an alter ego claim of action.").

property right in the securities. *Id.* at 980–81.

The Eleventh Circuit agreed with E.F. Hutton, finding that the debtor had no interest in the securities. *Id.* at 985. There was no evidence the securities were owned by the debtor rather than its customers. *Id.* Thus, the debtor's customers-not the debtor-had a cause of action against E.F. Hutton, so that it had not become property of the bankruptcy estate. *Id.* The *Hutton* decision is consistent with the outcome of alter ego cases in other circuits: If the debtor could not bring a cause of action outside bankruptcy, the trustee cannot pursue that action in bankruptcy.

In reaching its decision, the Eleventh Circuit considered the United States Supreme Court case *Caplin v. Marine Midland Grace Trust Co.*, 406 U.S. 416, 92 S.Ct. 1678, 32 L.Ed.2d 195 (1972). In *Caplin*, the misconduct of a third party (the indenture trustee) injured the debtor's debenture holders. The bankruptcy trustee sought to assert a cause of action against the debenture trustee on behalf of the debenture holders. *Id.* at 418–20, 92 S.Ct. at 1680–81. The Court denied the trustee standing to sue based on three factors: (1) nothing in the Bankruptcy Act or other relevant law gave the trustee standing to sue third parties on behalf of the debenture holders; (2) the debtor had no claim against the indenture trustee; and (3) the trustee's suit and subsequent actions initiated by the debenture holders could lead to inconsistent results. *Id.* at 428–34, 92 S.Ct. at 1685–88.

In *Hutton*, the Eleventh Circuit found all three factors to be present. 901 F.2d at 986. However, when the cause of action is property of the bankruptcy estate, these problems disappear. First, the trustee would not be suing on behalf of creditors, but on behalf of the debtor. Second, the

cause of action could only become property of the estate if the debtor had a claim against the defendant. Third, because creditors would be enjoined by the automatic stay from interfering with property of the estate, they would not be able to pursue the same claim; thus, preventing inconsistent litigation results.

■ As the foregoing cases indicate, the Court must determine whether a corporation could bring an alter ego action against its principal under Georgia law. None of the parties were able to locate any Georgia cases directly on point, and the Court's research has been similarly fruitless. However, it is well established that, in Georgia,

> in order to disregard the corporate entity because a corporation is a mere alter ego or business conduit of a person, it should have been used as a subterfuge so that to observe it would work an injustice. To prevail based upon this theory it is necessary to show that the shareholders disregarded the corporate entity and made it a mere instrumentality for the transaction of their own affairs; that there is such unity of interest and ownership that the separate personalities of the corporation and the owners no longer exist. The concept of piercing the corporate veil is applied in Georgia to remedy injustices which arise where a party has over extended his privilege in the use of a corporate entity in order to defeat justice, perpetuate fraud or to evade contractual or tort responsibility.

*Heyde v. Xtraman, Inc.*, 199 Ga.App. 303, 306, 404 S.E.2d 607, 610 (1991) (citations and internal quotation marks omitted).

Thus, the law appears to hinge on the types of equitable concerns that affected the outcome in the *S.I. Acquisition, Koch Refining, Phar–Mor, American Financial,*

and *Steyr–Daimler–Puch* cases.[7] So, a cause of action invoking the alter ego theory likely would become property of the debtor's bankruptcy estate. *Moore v. Kumer* (*In re Adam Furniture Ind., Inc.*), 191 B.R. 249, 257 (Bankr.S.D.Ga.1996) ("Georgia law supports an alter ego action by the debtor, and ... the trustee succeeds to the right to institute such an action ...."); *Stamps v. Knobloch* (*In re City Communications, Ltd.*), 105 B.R. 1018, 1022 (Bankr.N.D.Ga.1989) ("[U]nder Georgia law, an alter ego claim is property of the estate under § 541 and can be asserted by the Trustee.").

One bankruptcy court has rejected an interpretation of Georgia law that would permit a corporation to pierce its own veil. *Ellenberg v. Waliagha* (*In re Mattress N More, Inc.*), 231 B.R. 104 (Bankr.N.D.Ga. 1998). While acknowledging that "[i]t is difficult to predict what the state law is or would be when there is no state court case on point," the court said it was "not persuaded that a trustee can destroy the corporate fiction to make shareholders and related entities liable for all the debtor's debts and the trustee's administrative expenses." *Id.* at 109, n. 3. The court reached this decision after reviewing "principles of corporate jurisprudence and dozens of Georgia cases involving veil-piercing claims." *Id.* at 109. It concluded that veil piercing is really a debt collection device for creditors, and stated that there "is something anomalous about a corporation, which is created to protect its shareholders from the liability of the enterprise, asserting a claim to destroy the very protection for which it was created." *Id.* Thus, the court held that the alter ego claim was not property of the estate and could not be asserted by the trustee. *Id.* at 109–10.

The Georgia Court of Appeals has since decided a case that casts doubt on the rationale of *Mattress N More.* In *Paul v. Destito,* 250 Ga.App. 631, 550 S.E.2d 739 (2001), the defendants argued that "Georgia law does not allow a person who is a shareholder, director, and officer of a corporation to 'pierce the veil' of his own corporation." *Id.* at 638, 550 S.E.2d at 747. The court disagreed, noting that it previously had allowed a 50 percent shareholder and director of a corporation to pursue a claim for piercing the corporate veil. *Id.* at 639, 550 S.E.2d at 747 (citing *Cheney v. Moore,* 193 Ga.App. 312, 312–13, 387 S.E.2d 575, 576 (1989)). Thus, the court rejected the "sweeping assertion that, in all cases, Georgia law prohibits a director, officer, or shareholder from piercing the corporate veil." *Id.* The court, instead, focused on the standard in Georgia for piercing the veil, which it emphasized is rooted in equity concerns: "Georgia courts pierce the corporate veil 'to remedy injustices which arise where a party has overextended his privilege in the use of a corporate entity in order to defeat justice, perpetrate fraud or evade contractual or tort responsibility.'" *Id.* (quoting *Cheney,* 193 Ga.App. at 312–13, 387 S.E.2d at 576). *Paul* indicates that the scope of potential plaintiffs in an alter ego action is not limited to creditors; rather it can include those who enjoy the protections of the corporate form. Thus, Georgia law does not require harm to a third party. Rather, it looks to whether there has been any abuse of the corporate form that has resulted in inequities. In light of the *Paul* case, the Court finds the reasoning in *Mattress N More* unpersuasive.

Some courts have made a distinction between general claims, belonging to all creditors, and personal claims, which are specific to one creditor. *See, e.g., St.*

---

7. *See supra* note 6 and accompanying text.

*Paul Fire & Marine Ins. Co. v. PepsiCo, Inc.,* 884 F.2d 688, 701 (2d Cir.1989); *Koch Refining,* 831 F.2d at 1348–49; *City Communications,* 105 B.R. at 1022–23. Under this distinction, the trustee has standing to pursue general but not personal claims. The Court finds this distinction irrelevant to the inquiry at hand. *See Adam Furniture,* 191 B.R. at 257 n. 6. The alter ego theory is one that could be used by any creditor seeking to recover money, and the path to the principal's pockets must go through the debtor corporation. The Court is unable to hypothesize any set of circumstances in this case in which the principal's disregard of the corporate form would create a particularized injury to one creditor. Furthermore, no such creditor-specific claim has been raised in this case. Once the corporate form has been disregarded, any unpaid creditor could argue for piercing the corporate veil. In bankruptcy, if the alter ego claim is property of the estate, all creditors are barred from prosecuting such a claim by the automatic stay. "[A] section 362(a)(3) [8] stay applies to a cause of action that under state (or federal) law belongs to the debtor[.]" *S.I. Acquisition,* 817 F.2d at 1150 (footnote added). As a result, a creditor cannot pursue the claim unless the trustee has abandoned it. *Steyr–Daimler–Puch,* 852 F.2d at 136.

Based on the foregoing the Court concludes as follows: A trustee has the exclusive right to bring an alter ego action if it is property of the bankruptcy estate. Any suits seeking an alter ego remedy filed by creditors are subject to the automatic stay unless the cause of action is abandoned by the trustee. Based on the *Paul* case, this

Court predicts that under Georgia law, an alter ego claim may be asserted by the corporation and, thus, becomes property of the estate. Therefore, the alter ego claim against Thompson at issue here became property of the estate upon Debtor's bankruptcy filing. As a result, Debtor in Possession has exclusive standing to pursue an alter ego claim against Thompson. Any suits initiated by the Creditors to recover unpaid debt on the theory that Thompson is the alter ego of Debtor violate the automatic stay.

Because the Court has held that the alter ego claim is property of the estate, it need not consider Thompson's argument that Debtor in Possession may enforce the Creditors' alter ego claims pursuant to Section 544. Furthermore, because the Court has concluded that the automatic stay applies to the Edwards and Baillie cases, it need not consider whether to stay those cases pursuant to Section 105(a).

In light of the procedural posture of these cases, the Court will rule as follows: With respect to the Baillie case, Thompson and Debtor filed a complaint for injunctive relief to prevent Baillie from proceeding with an alter ego claim against Thompson. Because the Court has found that Baillie's suit is subject to the automatic stay, a separate injunction is unnecessary. Therefore, the Court will grant Baillie's motion for summary judgment and deny Thompson's and Debtor's motions for summary judgment. In the Edwards case, Edwards' motion to remand remains outstanding. The Court will grant the motion for remand pursuant to 28 U.S.C. § 1452(b), which allows remand on equitable grounds. [9] The Court finds sufficient

---

8. "(a) [A] petition filed under section 301 ... of this title ... operates as a stay, applicable to all entities, of ... (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C.A. § 362(a)(3) (West 1993 & Supp.2002).

9. Section 1452 reads, in relevant part, as follows:

equitable grounds to remand the case. First, the Baillie case already is pending in state court with no chance of removal. Should the automatic stay be modified to allow the cases to proceed, it would be more efficient and would lessen the possibility of inconsistent results to allow the same issue to be tried in a single forum. Second, as an issue of state law, the most appropriate forum for the case is the state court. *See Wilson v. Alfa Cos. (In re Wilson)*, 207 B.R. 241, 249 (Bankr.N.D.Ala. 1996) (listing factors for consideration in a remand decision). However, like the Baillie case, the Edwards case is subject to the automatic stay.

(a) A party may remove any claim or cause of action in a civil action other than a proceeding before the United States Tax Court or a civil action by a governmental unit to enforce such governmental unit's police or regulatory power, to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title.

(b) The court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground.

28 U.S.C.A. § 1452 (West 1994).