[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 03-15932
_____

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
December 02, 2004
THOMAS K. KAHN
CLERK

D. C. Docket No. 02-00433-CV-4-DF-5
BKCY No. 01-55662 BKC-JD

ICARUS HOLDING, LLC,
a.k.a. Piedmont Hardwood Flooring, LLC.,

                                                            Debtor.

_____

BAILLIE LUMBER COMPANY, LP,

                                                            Plaintiff-Appellant,

versus

BERT F. THOMPSON,
ICARUS HOLDING, LLC,
f.k.a. Piedmont Hardwood Flooring, LLC.,

                                                            Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

**(December 2, 2004)**

Before BIRCH, BARKETT and COX, Circuit Judges.

BIRCH, Circuit Judge:

CERTIFICATION FROM THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT TO THE SUPREME COURT OF GEORGIA, PURSUANT TO O.C.G.A. § 15-2-9. TO THE SUPREME COURT OF GEORGIA AND ITS HONORABLE JUSTICES:

In this case we must determine if a corporate entity in bankruptcy has exclusive standing to bring a state alter ego action against its principal. Baillie Lumber Company ("Baillie Lumber") appeals the order of the district court granting summary judgment in favor of Bert F. Thompson ("Thompson") and Icarus Holdings, LLC ("Icarus")[1] as to Georgia alter ego claims against Thompson. The district court approved the bankruptcy court's decision that held an alter ego claim is property of the debtor's bankruptcy estate under Georgia law, and therefore, the debtor has exclusive standing to bring such a claim. Because it is unclear under Georgia law whether a corporate entity can bring an alter ego action against its former principal, we certify the question to the Supreme Court of Georgia for review. Question CERTIFIED.

## I. BACKGROUND

The facts of this case are undisputed. Icarus is a national manufacturer and

---

[1]Formerly known as Piedmont Hardwood Flooring, LLC.

distributer of hardwood flooring. Before 17 December 2001, Baillie Lumber sold lumber to Icarus and was never paid. On 17 December 2001, Icarus filed for Chapter 11 bankruptcy. Prior to that date, Thompson, Icarus's primary member and president, engaged in certain financial irregularities that harmed Icarus's liquidity. These irregularities included the use of Icarus's assest and resources to make improvements on Thompson's hunting lodge, and the use of Icarus's assets to fund Thompson's separate company, Southern Wood Services, LLC. At the time of this suit Thompson was no longer involved in the management of Icarus.

On 28 December 2001, Icarus filed a complaint against Thompson in bankruptcy court claiming that the irregularities were fraudulent transfers and were held in constructive trust for Icarus. On 8 January 2002, Baillie Lumber filed suit against Thompson in a Georgia state court alleging Thomson is the alter ego of Icarus and thus personally liable for the debts owed to Baillie Lumber. Baillie argues that the state alter ego claim is not the property of Icarus's estate, and that it is not trying to recover money owed to the estate. Thus, Baillie contends that Icarus and the Official Committee of Unsecured Creditors of Icarus ("Committee")[2] have no authority to settle the alter ego claim against Thompson.

Meanwhile, Icarus and the Committee began negotiations with Thompson to

---

[2]Baillie Lumber is a member of this committee.

settle, among other things, any alter ego suit they may have against Thompson. On 17 April 2002, Thompson brought this suit requesting injunctive relief because the alter ego claim is property of Icarus's estate. A week later, Icarus also joined in this suit as a third party plaintiff.

On 10 October 2002, the bankruptcy court issued an order holding that Georgia law makes the alter ego claim the property of Icarus's estate, and, therefore, Icarus has the exclusive right to bring an alter ego claim against Thompson. Further, it held that the separate alter ego suit brought by Baillie Lumber would be subject to an automatic stay. On appeal to the district court, the decision of the bankruptcy court was upheld.

Baillie Lumber now appeals to this court arguing that its alter ego claim against a third party, in this case Thompson, was separate property. Specifically, Baillie Lumber argues that under 11 U.S.C. § 541 a bankruptcy estate includes only property that the debtor possessed at the time of the bankruptcy filing, and here, Baillie Lumber claims the Georgia alter ego claim against Thompson is its own separate property.

## II. DISCUSSION

The bankruptcy court and district court granted summary judgment by interpreting Georgia law to allow a corporation's alter ego suit against its former

4

principal, thus making any such claims property of the bankruptcy estate, 11 U.S.C. § 541, and any similar claims by creditors subject to an automatic stay, 11 U.S.C. § 362.  We review the district court's interpretation of law and determination of estate property de novo.  See In re Witko, 374 F.3d 1040, 1042 (11th Cir. 2004).  Because standing to assert the alter ego claim is a question of state law in this case, we must review the district court's decision in accordance with Georgia law.  See Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S. Ct. 817 (1938).  Where there is doubt in the interpretation of state law however, "a federal court should certify the question to the state supreme court to avoid making unnecessary Erie 'guesses' and to offer the state court the opportunity to interpret or change existing law."  CSX Transp., Inc. v. City of Garden City, 325 F.3d 1236, 1239 (11th Cir. 2003) (citations omitted).

In order to stay Baillie Lumber's separate alter ego action against Thompson, Icarus[3] must have standing to bring its own alter ego action under 11 U.S.C. § 541 or 11 U.S.C. § 544.  Generally, courts that allow the trustee or debtor-in-possession to bring an exclusive alter ego action do so under section 541.  See, e.g., St. Paul Fire & Marine Ins. Co. v. Pepsico, Inc., 884 F.2d 688, 700-05 (2d Cir. 1989); Koch Refining v. Farmers Union Cent. Exch., Inc., 831 F.2d 1339, 1343-47

---

[3]A trustee was not appointed in this case, but Icarus, the debtor-in-possession, plays essentially the same role for purposes of bankruptcy law. 11 U.S.C. § 1107(a).

(7th Cir. 1987) ("Koch"); In re S.I. Acquisition, 817 F.2d 1142, 1153 (5th Cir.

1987); In re City Communications, Ltd., 105 B.R. 1018, 1020 (Bankr. N.D. Ga.

1989).[4]

A. Section 541

Section 541 establishes a debtor's bankruptcy estate and includes "all legal

and equitable interests of the debtor in property as of the commencement of the

case." 11 U.S.C. § 541(a). This includes legal causes of action the debtor had

against others at the commencement of the bankruptcy case. See Koch, 831 F.2d at

1343-44; In re Adam Furniture Indus., Inc., 191 B.R. 249, 255 (Bankr. S.D. Ga.

1996) ("Adam Furniture"). If such causes of action, including alter ego actions,

are property of the estate under section 541(a), any similar extraneous lawsuits

brought by individual creditors will be subject to the automatic stay provision of 11

---

[4]While other circuits have recognized that section 544 may be an alternative grounds for trustees and debtor corporations to assert exclusive alter ego claims as representatives of all creditors, see, e.g., Koch, 831 F. 2d 1339, 1342-43 (7th Cir. 1987), we believe this approach, though not dispositive here, is tenuous at best. Our decision in E.F. Hutton & Co. v. Hadley, casts serious doubt on the use of section 544 to bring alter ego actions. 901 F.2d 979, 985-86 (11th Cir. 1990). The purpose of section 544 is to give a trustee the power of a hypothetical lien creditor to avoid transfers of and liens on the debtor's property when the trustee cannot prevent them under other sections of the bankruptcy code. See 11 U.S.C. § 544; In re Ozark Rest. Equip. Co., 816 F.2d 1222, 1229-30 (8th Cir. 1987) ("Ozark"). Many courts have completely rejected 544's use as a means for debtor corporations to bring alter ego actions. See, e.g., id. at 1230; see also Shearson Lehman Hutton, Inc. v. Wagoner, 944 F.2d 114, 118 (2d Cir. 1991) (interpreting Caplin v. Marine Midland Grace Trust Co., 406 U.S. 416, 434, 92 S. Ct. 1678 (1972) to say that "a bankruptcy trustee has no standing generally to sue third parties on behalf of the estate's creditors, but may only assert claims held by the bankrupt corporation itself."); City Communications, 105 B.R. at 1021 (interpreting Caplin and subsequent congressional history to mean section 544 is not an alternative for alter ego claims).

6

U.S.C. § 362(a)(3).[5]  See S.I. Acquisition, 817 F.2d at 1153.  We must, therefore, look to Georgia law to determine whether Icarus is allowed to bring an alter ego action against its former principal, therefore making it property of the bankruptcy estate and Baillie Lumber's separate state action subject to the automatic stay.

Although several circuits have examined this same issue, not all circuits have arrived at the same result.  Before allowing a debtor-in-possesion or trustee to bring an alter ego action on behalf of the corporation, most courts require that (1) the alter ego claim be a general claim that applies equally to all creditors, and (2) state law allows the corporate entity to bring an alter ego action against its principal.  See St. Paul Fire & Marine Ins., 884 F.2d at 703-04 (interpreting state law to allow corporations to bring alter ego actions against a parent because it prevents injustice and allowing third party creditors to only bring personal and not general alter ego type claims); Koch, 831 F.2d at 1345-46.

In Koch for example, oil company creditors asserted their right to bring a separate alter ego action against a debtor corporation.  The Seventh Circuit concluded that Illinois and Indiana law allowed a trustee in bankruptcy to bring an alter ego action on behalf of the debtor corporation, and therefore, the trustee had

---

[5]A bankruptcy petition "operates as a[n] [automatic] stay applicable to all entities, of . . . any act to obtain possession of property of the estate or of property from the estate." 11 U.S.C. § 362(a)(3).

the exclusive right to bring an alter ego claim. See id. at 1346. The court reasoned that both Indiana and Illinois alter ego law was based on a doctrine that imposed liability to reach an equitable result, and, therefore, could allow a trustee to bring an alter ego suit against the principal if equity so required.[6] See id. The Koch court noted, however, that the trustee would only be able to bring general claims that are common to all creditors of the debtor corporation, and could not avoid the personal claims of creditors that are unique to that creditor. See id. at 1348-49. In Koch, the court concluded that the oil company's claims were general to all creditors and only affected the debtor corporation directly and the oil companies indirectly. Id. at 1349. Thus, the trustee in Koch could bring an exclusive alter ego action when the claims were common to all creditors and state law allowed a corporation to sue its principal.

In a subsequent opinion, the Seventh Circuit prevented a trustee from bringing an alter ego action because the claim was personal to the individual creditor and not general. See Steinberg v. Buczynski, 40 F.3d 890, 893 (7th Cir. 1994). In Steinberg, the bankruptcy trustee brought an alter ego suit against the

---

[6]The Illinois Supreme Court later rejected this interpretation of Illinois law, stating that Illinois alter ego law does not allow a subsidiary to bring an alter ego claim against its parent because to do so would torture the notion that alter ego claims are tools for creditors only and not corporations. See In re Rehab. of Centaur Ins. Co., 632 N.E.2d 1015, 1019 (Ill. 1994). The court noted that allowing a corporation to pierce its own veil would effectively deny the corporation of its own existence. See id. at 1018 (quoting In re Dakota Drilling, Inc., 135 B.R. 878, 884 (Bankr. D.N.D. 1991)).

debtor corporation's primary shareholders in an attempt to obtain money not paid to an employee pension fund.  See id. at 891.  The court found no evidence that the shareholders directly harmed the corporation itself by taking unreasonably high salaries or "looting" the corporate assets.  Id. at 892.  Only the pension fund was harmed directly.  See id.  Thus, the court held that an alter ego claim by the corporation itself would be improper because the injury was to the pension fund and not the corporation and creditors in general.[7]

On the other hand, the Eighth Circuit has interpreted Arkansas law to not allow alter ego actions by the corporation itself.  Ozark, 816 F.2d at 1225.  In Ozark, Arkansas law allowed veil piercing when "the corporate structure is illegally or fraudulently abused to the detriment of a third person."  Id. (citations omitted).  The court concluded that this language means that a veil-piercing action brought against a corporation is personal to the creditors themselves and cannot be brought by the corporation.  See id.  Thus, the veil piercing or alter ego claim is not property of the bankruptcy estate for the trustee to administer.  See id.

Like many courts that have addressed this issue, we hold that in order to bring an exclusive alter ego action under section 541, a bankruptcy trustee's claim

---

[7]Steinberg compares this claim to a hypothetical tort claim, where the neighbor of the debtor corporation's principal is injured on the principal's property.  The action brought by the neighbor in that case would be personal to the neighbor and not the sort of general claim a bankruptcy trustee could take. Steinberg, 40 F.3d at 892.

9

should (1) be a general claim that is common to all creditors and (2) be allowed by state law. See In re iPCS, Inc., 297 B.R. 283, 297 (Bankr. N.D. Ga. 2003). In this action, we find that Baillie Lumber asserts only a general cause of action and no personal damages that are unique to them. Baillie Lumber's claim would be personal if Baillie Lumber itself was "harmed and no other . . . creditor has an interest in the cause." Koch, 831 F.2d at 1348. The claim is a general one when liability extends "to all creditors of the corporation without regard to the personal dealings between such officers and such creditors." Id. at 1349. Here, the assertion is that Thompson blurred the line between himself and the corporation by taking assets of the corporation and using them to his own personal ends. Unlike the Steinberg shareholders, Thompson did "loot" the corporate assets. An alter ego action under these circumstances could be brought by all creditors of Icarus. Baillie Lumber has shown no unique or personal harm aside from the fact that each creditor would demand a different amount in compensation. By misappropriating corporate assets, Thomson caused direct harm to the corporation and only indirect harm to Baillie Lumber. Thus, this action meets our first factor. However, it is unclear whether Georgia law allows a corporation to bring an alter ego action against itself.

B. Georgia Alter Ego Law

10

There is no Georgia law that directly addresses whether a trustee for a debtor corporation in bankruptcy can bring an alter ego action against the corporation's former principal.  In Georgia, alter ego and veil-piercing actions are based on equitable principals.  Acree v. McMahan, 585 S.E.2d 873, 882 (Ga. 2003).  Georgia courts allow alter ego actions "to remedy injustices which arise where a party has overextended his privilege in the use of a corporate entity in order to defeat justice, perpetrate fraud or evade contractual or tort responsibility."  Paul v. Destito, 550 S.E.2d 739, 747 (Ga. App. 2001) (citations omitted).  The Georgia Supreme Court in past decisions, however, has noted that it "has been reluctant to disregard the corporate entity except where third parties were involved in dealing with the corporation and director or shareholder liability was in question, or where public policy might require looking beyond the corporate structure in the public interest."  Pickett v. Paine, 199 S.E.2d 223, 227 (Ga. 1973).[8]  In Pickett, the court refused to pierce the corporate veil for the benefit of a minority shareholder's suit against the majority shareholder.  Id. at 228.  The Georgia Court of Appeals, however, has rejected the proposition that Georgia law per se "prohibits a director, officer, or shareholder from piercing the corporate veil."  Paul, 550 S.E.2d at 747; see also Cheney v. Moore, 387 S.E.2d 575, 576-77 (Ga. App. 1989) (holding that a

_____

[8]It is unclear whether public policy in the second part of this statement would allow a corporation to bring an alter ego suit against a principal.

11

50 percent shareholder can pierce the corporate veil). Thus, as far as we can determine there is no clear demarcation in Georgia law that allows us to say an alter ego action is property of the bankruptcy estate.

The only courts in Georgia to address this issue directly are the federal bankruptcy courts, but they are divided on whether Georgia law allows a corporation to bring this type of alter ego action. Compare Adam Furniture, 191 B. R. at 255 (considering the corporation's alter ego claim as property of the estate under Georgia law), and City Communications, 105 B.R. at 1022 (interpreting Georgia law to allow corporations to bring alter ego claims), with In re Mattress N More, 231 B.R. 104, 109 (Bankr. N.D. Ga. 1998) (holding that Georgia law does not allow a corporation to bring alter ego actions). In the first case to consider the question, the City Communications court compared the Koch and Ozark cases and determined that, like the Koch court, Georgia alter ego law would allow a debtor corporation to bring general alter ego claims in bankruptcy because Georgia law was founded on equity concerns. See City Communications, 105 B.R. at 1022.[9] The Adam Furniture court subsequently followed the same reasoning and

---

[9]The bankruptcy court did note that, traditionally, alter ego actions are asserted by only creditors and not the corporation. See City Communications, 105 B.R. at 1022. The court, however, explained that state law makes it unlikely for a corporation to bring an alter ego action outside of bankruptcy because that would normally require the officers and directors to sue themselves. See id. Bankruptcy policy on the other hand has "different motives and policies underlying the development of their equitable remedies. . . ." and therefore makes "the logical and proper party to pursue [an alter ego] claim . . . the trustee." Id.

determined Georgia law allowed a corporation's alter ego suit for equity reasons. 191 B.R. at 255.

The Mattress N More court, on the other hand, rejected the reasoning of both City Communications and Adam Furniture to hold that Georgia law will not allow a corporation's alter ego suit. The court reasoned that although it might make sense for a trustee to have exclusive possession of an alter ego action, there was no basis in Georgia or bankruptcy law for such a result. See Mattress N More, 231 B.R. at 109-10. The court was troubled that a corporate entity created to shield shareholders from liability would itself assert a claim to destroy that protection. Id. at 109. Further, the court determined that it was "relatively difficult to pierce the corporate veil in Georgia." Id. Thus as the court explained, the issue is ripe for certification to the Georgia Supreme Court. Id. at 109 n.3. Considering the split between Georgia bankruptcy courts and the uncertain state of Georgia alter ego law, we choose to certify the following question to the Georgia Supreme Court:

1. WILL GEORGIA LAW ALLOW THE REPRESENTATIVE OF A DEBTOR CORPORATION TO BRING AN ALTER EGO CLAIM AGAINST THE CORPORATION'S FORMER PRINCIPAL?

13

2.    IF SO, WHAT IS THE MEASURE OF RECOVERY?

### III. CONCLUSION

This appeal comes after the bankruptcy and district courts interpreted Georgia law to allow a corporation to bring an alter ego suit, therefore making such a suit property of the bankruptcy estate under 11 U.S.C. § 541.  Because we find Georgia law is not clear in regard to this issue we have certified the question above.  Our particular phrasing of this question is not intended to limit the inquiry of the Supreme Court.  Neither is our recital of the parties' arguments intended to substitute for the full statement of contentions by the parties.  The Supreme Court is at liberty to consider the problems and issues involved in this case as it perceives them to be.  To assist in its consideration of this question, the entire record, along with the briefs of the parties, will be transmitted to the Supreme Court of Georgia. Until the Supreme Court responds to our certified question, all relevant proceedings in this appeal are STAYED.

QUESTION CERTIFIED.