ALAN E. NORRIS, Circuit Judge.
 

 Plaintiff, Spartan Tube and Steel, Inc. (“Spartan”), appeals from an order of the district court affirming a bankruptcy court’s judgment. The bankruptcy court held that only a debtor’s bankruptcy trustee has standing to assert an alter ego claim against the debtor’s parent company and stayed Spartan’s state court alter ego action against the parent company pursuant to § 362(a)(3) of the Bankruptcy Code. . The bankruptcy court’s judgment rested on the court’s determination that under Michigan law an alter ego claim constitutes property of the debtor’s estate for purposes of the Bankruptcy Code. For the reasons discussed below, we reverse.
 

 I.
 

 RCS Engineered Products Company (“RCS”), the debtor in this case, is a wholly owned, independent subsidiary of its parent, Railcar Specialties, Inc. (“Railcar”). Beginning in 1988, RCS purchased various products from Spartan on open account. In 1991, Spartan raised RCS’s credit limit on its account from $10,000 to $50,000. Spartan argues that it was induced to extend RCS additional credit based upon certain representations it received from RCS and Railcar “from which Spartan concluded that [RCS] was a division of the parent rather than a subsidiary.” Shortly thereafter, RCS’s balance on its account with Spartan rose above the $50,000 limit.
 

 In June of 1991, Spartan, along with other RCS creditors, filed a petition for involuntary bankruptcy against RCS under Chapter 7 of the Bankruptcy Code. The following day, Spartan filed a state court action against both RCS and Railcar, seeking a judgment in the amount of $52,382.08. Spartan’s claim against Railcar alleged that Railcar should be liable for RCS’s account debt because Railcar treated RCS as its alter ego, disregarded RCS as a separate corporate entity, and treated RCS as part of Railcar. The complaint asked the state court to “disregard any existing separate entity” of Railcar and hold it accountable for RCS’s debts.
 

 In July of 1991, RCS responded to the petition for involuntary bankruptcy by filing its own Chapter 7 petition, in effect converting the involuntary proceeding into a voluntary one. The Chapter 7 trustee of RCS, Daniel C. Himmelspach, subsequently initiated an adversary proceeding in the bankruptcy court against Railcar and alleged that “[Railcar] should be held liable on the contracts of [RCS] because [RCS] served as a
 
 *225
 
 mere instrumentality or adjunct of [Railcar].” In response, Railcar filed a complaint for declaratory relief in state court against Spartan and the bankruptcy trustee. Railcar’s complaint argued that the Bankruptcy Code permits only the bankruptcy trustee or Spartan, but not both, to bring an alter ego action against it. After the trustee removed Rail-car’s declaratory relief action to federal court, all parties asked the bankruptcy court to decide who had standing to sue Railcar under an alter ego theory.
 

 On May 31, 1994, the bankruptcy court issued a thorough opinion. Relying heavily on
 
 Wells v. Firestone Tire and Rubber Co.,
 
 421 Mich. 641, 364 N.W.2d 670 (1984), the court determined that under Michigan law an alter ego claim is property of the debtor’s estate for the purposes of the Bankruptcy Code. Accordingly, the court concluded that RCS’s bankruptcy trustee has standing to bring an alter ego claim against Railcar pursuant to § 704(a)(1) of the Code and that the automatic stay provision of the Code, 11 U.S.C. § 362(a)(3), bars Spartan’s state court action. On February 2, 1995, the district court issued an order adopting the bankruptcy court’s reasoning and affirming its judgment. Spartan appealed, arguing that the bankruptcy court erred in not permitting it to bring its own alter ego action against Railcar.
 

 II.
 

 On appeal Spartan does not contest the bankruptcy court’s holding that RCS’s bankruptcy trustee has standing to assert an alter ego claim against Railcar. However, it argues that the bankruptcy court erred in staying Spartan’s alter ego action against Railcar because “its cause of action is unique and particular to Spartan and one that the Trustee has no right to bring.” Although the factual findings underlying the bankruptcy court’s decision must be affirmed unless clearly erroneous, we review the court’s conclusions of law de novo.
 
 See, e.g., In re Carled, Inc.,
 
 91 F.3d 811, 813 (6th Cir.1996). The parties agree that Michigan law controls our decision.
 

 Upon review, we conclude that the bankruptcy court erred in holding that under Michigan law an alter ego claim constitutes property of the debtor’s estate. Accordingly, it follows that RCS’s bankruptcy trustee does not have standing to assert an alter ego claim against Railcar, and that the automatic stay provision of the Bankruptcy Code does not apply to Spartan’s state court action. We address these issues in turn.
 

 A
 
 Bankruptcy Trustee’s Standing to
 
 As
 
 sert an Alter Ego Claim Against Parent Corporation
 

 Section 704 of the Bankruptcy Code requires a Chapter 7 trustee to “collect and reduce to money the
 
 property of the estate
 
 for which the trustee serves_” 11 U.S.C. § 704(1) (emphasis added). Section 541(a)(1) defines “property of the estate” to include “all legal or equitable interests of the debtor in property as of the commencement of the case.”
 
 Id.
 
 § 541(a)(1). It is clear that causes of action belonging to the debtor prior to bankruptcy constitute estate property, and that § 704(1) grants the bankruptcy trustee the authority to pursue such causes of action.
 
 See
 
 4 Collier on Bankruptcy Par. 541.10[1], at 541-62 (15th ed. 1986).
 

 Whether a particular cause of action is available to the debtor, and thus constitutes “property of the estate,” is determined by state law.
 
 See, e.g., Butner v. United States,
 
 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). Thus, if Michigan law allows a corporation to assert an alter ego claim against its shareholders or its parent company by disregarding its corporate entity, the claim is property of the estate, and RCS’s bankruptcy trustee has standing to assert it against Railcar. No Michigan court has specifically addressed this issue, and courts interpreting the law of other states have reached varying results.
 
 See, e.g., In re Ozark Restaurant Equipment Co.,
 
 816 F.2d 1222, 1225-26 (8th Cir.),
 
 cert. denied,
 
 484 U.S. 848, 108 S.Ct. 147, 98 L.Ed.2d 102 (1987) (concluding that subsidiary does not have standing to assert alter ego claim against parent company under Arkansas law);
 
 In re Lee Way Holding Co.,
 
 105 B.R. 404, 410-12 (Bankr.S.D.Ohio 1989) (concluding that subsidiary has standing to assert alter ego claim against parent company un
 
 *226
 
 der Ohio law). A review of Michigan alter ego cases and basic principles of the law of corporations leads us to conclude, however, that under Michigan law a subsidiary does not have standing to sue its shareholders or its parent company under an alter ego theory.
 

 “[T]he general principle in Michigan is that separate corporate identities will be respected, and thus corporate veils will be pierced only to prevent fraud or injustice.”
 
 Wodogaza v. H & R Terminals, Inc.,
 
 161 Mich.App. 746, 756, 411 N.W.2d 848, 852 (1987).
 
 See also Wells v. Firestone Tire and Rubber Co.,
 
 421 Mich. 641, 650, 364 N.W.2d 670, 674 (1984). A court may find that one entity is the alter ego of another and pierce the corporate veil upon proof of three elements: first, the corporate entity must be a mere instrumentality of another; second, the corporate entity must be used to commit a fraud or wrong; and third, there must have been an unjust loss or injury to the plaintiff.
 
 Nogueras v. Maisel &
 
 Assoc.
 
 of Michigan,
 
 142 Mich.App. 71, 86, 369 N.W.2d 492, 498 (1985). Thus, in order for a subsidiary to be able to assert an alter ego claim against its parent company, the subsidiary would need to show that it suffered “an unjust loss or injury” as a result of it being used by the parent as an instrumentality to commit a fraud or wrong against itself. Since it is axiomatic that one cannot commit a fraud or wrong against oneself, a subsidiary would never be able to satisfy the standard for disregarding corporate identity under Michigan law. It would, therefore, appear that under Michigan law a subsidiary may not assert an alter ego claim against its parent company.
 

 That a subsidiary does not have standing to raise an alter ego claim against its parent is further supported by basic principles of corporations law. The general rule is that the corporate veil is pierced only for the benefit of third parties, and never for the benefit of the corporation or its stockholders. 18 Am.Jur.2d Corporations § 46 (1985);
 
 accord In re Ozark Restaurant Equipment Co., Inc.,
 
 816 F.2d 1222, 1225 (8th Cir.1987). Furthermore, an alter ego claim is not by itself a cause of action. Rather, it is a doctrine which
 

 fastens liability on the individual who uses a corporation merely as an instrumentality to conduct his or her own personal business, and such liability arises from fraud or injustice perpetuated not on the corporation but on third persons dealing with the corporation. The corporate form may be disregarded only where equity requires the action to assist a third party.
 

 1 Fletcher Cyclopedia on the Law of Private Corporations § 41.10 at 615 (1990) (citations omitted).
 
 See also Belleville v. Hanby,
 
 152 Mich.App. 548, 394 N.W.2d 412 (1986) (concluding that alter ago claim merely seeks to establish an identity of interest between two entities). Accordingly, courts apply the alter ego theory and disregard a company’s separate corporate identity for the benefit of third parties,
 
 e.g.,
 
 creditors of the corporation, who would suffer an unjust loss or injury unless the shareholders or the parent corporation were held liable for the subsidiary’s debts.
 

 The bankruptcy court’s conclusion that Michigan law would permit a subsidiary to bring an alter ego action against its parent company rested on the court’s interpretation of
 
 Wells v. Firestone Tire and Rubber Co.,
 
 421 Mich. 641, 364 N.W.2d 670 (1984). In
 
 Wells,
 
 a “reverse veil-piercing” case, the Michigan Supreme Court allowed a parent company to invoke the alter ego doctrine to defeat a products liability claim brought against it by an employee of one of its subsidiaries. Since the parent and its subsidiary were in essence a single entity, the employee’s claim was barred by the exclusive remedy provision of the Michigan Workers’ Disability Compensation Act.
 
 Id.
 
 at 650-51, 364 N.W.2d 670. The bankruptcy court concluded that “since under
 
 Wells
 
 the
 
 controlling
 
 entity can successfully invoke the alter ego doctrine, it follows logically that the
 
 controlled
 
 entity could do likewise — or at least have standing to assert the doctrine.” (Emphasis in original.) This conclusion, however, ignores the key limiting factor in
 
 Wells,
 
 and in other “reverse veil-piercing” cases like it— the alter ego doctrine is invoked by a parent company to defend a third-party claim.
 
 *227
 
 There is simply nothing in the cases to suggest that Michigan courts would allow an alter ego claim to be brought in other than third-party situations.
 

 Since a subsidiary may not bring an alter ego claim against its parent company under Michigan law, the claim does not become the property of the estate under § 541(a)(1) of the Bankruptcy Code when the subsidiary files a petition for bankruptcy. Accordingly, the subsidiary’s bankruptcy trustee may not bring an alter ego claim under § 704(1) of the Code. Thus, we conclude that the bankruptcy court erred in holding that RCS’s bankruptcy trustee has standing under these sections to assert an alter ego claim against Railcar.
 

 B. Automatic Stay of State-Court Action
 

 Section 362 of the Bankruptcy Code provides that filing of a bankruptcy petition “operates as a stay, applicable to all entities, of ... any act to obtain possession of
 
 property of the estate
 
 or of
 
 property from the estate,
 
 or to exercise control over
 
 property of the estate.”
 
 11 U.S.C. § 362(a)(3) (emphasis added). As we determined above, an alter ego claim against the parent company is not property of the subsidiary’s estate for the purposes of the Bankruptcy Code. Accordingly, the automatic stay provision of the Code does not apply to Spartan’s state court alter ego action against Railcar.
 

 III.
 

 For the foregoing reasons, the judgment of the district court is reversed.