**In re SWALLEN'S, INC., Debtor.**

**Bankruptcy No. 95–14476.**

United States Bankruptcy Court,
S.D. Ohio,
Western Division.

Feb. 26, 1997.

Thomas W. Coffey, Reuel D. Ash, Cincinnati, OH, for Debtor.

Donald J. Rafferty, Richard D. Nelson, Cincinnati, OH, for the UCC.

James R. Cummins, Kathryn K. Przywara, Kevin E. Irvin, Robert G. Sanker, Cincinnati, OH, for Debenture Class.

Robert A. Goering, Cincinnati, OH.

Steven E. Fox, New York City.

Timothy J. Hurley, Cincinnati, OH.

## ORDER ON UCC MOTION TO STAY STATE COURT LITIGATION

BURTON PERLMAN, Bankruptcy Judge.

Before the court is a motion by the Unsecured Creditors' Committee ("UCC") which has alternative objectives. Both objectives seek relief with regard to litigation currently pending in the Hamilton County Court of Common Pleas captioned *Stelter et al. v. Swallen et al.*, Case No. A–96–01477 (hereafter "the Stelter litigation"). First, the UCC, in effect, seeks a declaration that the existing § 362 automatic stay with respect to the debtor in this bankruptcy case be extended to bar further prosecution of the Stelter litigation. In the alternative, the UCC seeks an injunction pursuant to § 105 of the Bankruptcy Code enjoining further prosecution of the Stelter litigation pending confirmation of a plan yet to be filed in this bankruptcy case. It is part of the recitation by the UCC in its motion that in such plan it will be seeking approval of a certain Settlement Agreement entered into between the UCC and the Swal-

len Family.[1] The motion of the UCC is opposed by the plaintiffs in the Stelter litigation. (We will hereafter refer to such opponents as "respondents.") The UCC moved for an expedited hearing. That motion was granted, and the motion was heard on an expedited basis. The UCC and respondents appeared at and made presentations at the hearing.

This court has jurisdiction of this matter pursuant to 28 U.S.C. § 1334(b) and the General Order of Reference entered in this District. This is a core proceeding arising under 28 U.S.C. § 157(b)(2)(A) and (G).

At the hearing, the court expressed concern on several accounts. First, the need for an expedited hearing was questioned in view of the fact that the Stelter litigation has been in progress since March, 1996, and while the settlement by the UCC with the Swallen Family was formalized but a few weeks ago, it has been in the offing for some months. The court also expressed concern that the UCC was planning on deferring consideration of approval of the Settlement Agreement between the UCC and the Swallen Family until the time for confirmation of a yet to be proposed plan. That consideration was relevant to our present consideration because it is a condition precedent to effectiveness of the Settlement Agreement that the Stelter litigation be stayed pending confirmation of a plan framed to constitute approval of the Settlement Agreement.

Because of the foregoing concerns, the court announced two conclusions and holdings at the hearing. First, the court would not consider the merits of the motion for a § 105 injunction on the present motion, because F.R.B.P. 7016, upon which the UCC expressly relies in its motion, itself requires that such relief be sought through an adversary proceeding. That part of the motion of the UCC is therefore denied. Second, the court directed that the Settlement Agreement be the subject of a motion pursuant to F.R.B.P. 9019, and that such motion be brought before the court promptly. With these steps taken by the court, there re-

---

1. "Swallen Family" as used herein refers to a number of individuals and trusts said to have benefitted upon sale of their stock holdings in the debtor corporation, a transaction under attack by movant and also in the Stelter litigation.

mained then for consideration on the present motion the single question of whether the existing § 362 automatic stay could or should be extended to restrain further conduct of the Stelter litigation.

We will be making reference hereafter to facts suggested by the UCC and the respondents on the present motion, the truth of which we will accept only for purposes of the present motion. On March 8, 1996, pursuant to authorization sought by the UCC, the court authorized the UCC, among other things, to investigate and prosecute "any and all causes of action that may exist against any entity, individual, shareholder or insider that is related to, arises from or is in connection" with certain stock purchase transactions whereby the Swallen Family sold substantially all of their stock in the debtor to a group of investors. The Swallen Family received consideration for this transaction. Pursuant to the mentioned authorization by the court, the UCC considered the question of whether the transaction amounted to a fraudulent and/or preferential transfer. Before arriving at the Settlement Agreement with the Swallen Family, the UCC conducted extensive discovery and investigation. The UCC used this effort as a basis for reaching a settlement with the Swallen Family.

Pursuant to the Settlement Agreement, debtor will receive over $1.7 million from the Swallen Family. In exchange, the Swallen Family will receive a release of all claims arising from the stock purchase transaction, which release must include a full release of the Swallen Family from liability in the Stelter litigation, or "in the alternative, a permanent injunction enjoining any and all parties from continuation of the 'Stelter' litigation or institution of any similar suit as to the 'Swallen Family'." The Settlement Agreement also required the enforcement of the automatic stay or the issuance of an injunction by the court with respect to the Stelter litigation pending confirmation of a plan in the bankruptcy case. In its memorandum in chief, the UCC characterizes the Settlement Agreement as one which will generate $1,730,200.00 for the debtor's estate, "representing the avoidance of certain fraudulent conveyances and preferential transfers con-

summated shortly before the commencement of this Chapter 11 case."

The UCC with the exhibits which it submitted in support of the present motion included a copy of the complaint filed in the Stelter litigation in the Court of Common Pleas for Hamilton County. Plaintiffs in that suit (here "respondents") are a number of debenture holders of the debtor, and the complaint is framed as a class action for all debenture holders. The defendants in the state court action appear to include the same individuals and trusts as identified by the UCC as the Swallen Family, and in addition the individuals and corporations who purchased the stock of the debtor from the Swallen family.

After extensive allegations of purported facts, of which we will have more to say later, the complaint sets forth five counts. Count 1 is brought against certain defendants from both the Swallen Family and also the purchaser group, for fraud and breach of duty to plaintiff debenture holders. Count 2 is against all defendants, and is based on tortious interference with contractual relationships. That is, plaintiffs say that their debentures constitute contractual relationships and defendants' conduct interfered with those relationships. Count 3 is against the same defendants as are named in Count 1, for breach of fiduciary duty, which duty is alleged to have been breached by fraudulent conduct of defendants, consisting of failure to disclose to plaintiffs. Count 4 is against the same certain defendants as are named in Counts 1 and 3. It alleges negligence in the conduct of the named defendants in failing to disclose material facts. Count 5 is against all defendants and seeks punitive damages.

With respect to the single question to which we have indicated our present consideration will be directed, the UCC looks to § 362(a)(3) of the Bankruptcy Code as the basis for its claim. There, the Code says that the filing of debtor's petition:

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of

1970, operates as a stay, applicable to all entities, of—

\* \* \* \* \* \*

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

\* \* \* \* \* \*

The UCC then goes on to point out that the term "property of the estate" includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). The UCC in its memorandum asserts that in its settlement it is recovering property of the estate consisting of "both the claim itself and the property that was transferred." As the basis for its present contention that the § 362 automatic stay should be extended to the Stelter litigation, the UCC asserts that plaintiffs in the Stelter litigation are attempting "to pursue the claims and to recover funds that are property of the estate."

In their opposition to the present motion, respondents assert that the contentions of the UCC are incorrect, for, they say, their claims in the Stelter litigation are not property of the estate. They argue that the claims in the Stelter litigation are direct claims, not derivative claims, that is, they are personal to respondents, and are not claims of the debtor against the defendants. The claims, they say, are based upon the relationship between defendants and the debenture holders as a result of the representations that defendants made in offering circulars and other documents, and in oral communications; the failure of defendants to disclose certain facts to the debenture holders despite their continuing duty to do so, and their interference with the course of dealing between the debtor and the debenture holders.

The presentations by the parties thus require a determination of whether the Stelter litigation represents an "act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). In dealing with the question of property of the estate in this case, we must deal with two distinct considerations. The first is the question of whether the consideration which was transferred in the stock purchase agreement is, though in the hands of nondebtors, property of the estate. The second consideration is whether the claims being asserted by plaintiffs in the Stelter litigation themselves are property of the estate. We answer both questions in the affirmative.

1. Transferred Property as Property of the Estate.

■■■■ We hold, on the authority of *In re MortgageAmerica*, 714 F.2d 1266 (5th Cir. 1983), that funds in the hands of putative fraudulent transferees are property of the estate. Those funds are the target of the Stelter litigation. The Stelter litigation therefore is violative of 11 U.S.C. § 362(a)(3). The holding in *MortgageAmerica* is based upon the view of the court that § 541(c)(1) "is all-encompassing, and Congress meant for it to be construed commensurately." *Id.* at 1274. The court, to reach that conclusion, examined the legislative history of § 541(a)(1). It coupled with that review an examination of the "fundamental bankruptcy policy of equitable distribution among creditors." *Id.* at 1275. Because we believe *MortgageAmerica* to be soundly based, we apply it here. We note that the Sixth Circuit applied the case in *NLRB v. Martin Arsham Sewing Co.*, 873 F.2d 884, 887–88 (6th Cir. 1989), and in *In re Fletcher*, 176 B.R. 445, 452 (Bankr.W.D.Mich.1995) the court treated the case as having continuing validity.[2]

**2.** We are aware that *In re Colonial Realty Co.*, 980 F.2d 125 (2nd Cir.1992) questions the validity of *MortgageAmerica*, but we nevertheless follow *MortgageAmerica*. We do so in view of the following considerations. Despite *Colonial Realty*, the Fifth Circuit continues to adhere to *MortgageAmerica*. *See In re Criswell*, 102 F.3d 1411 (5th Cir.1997). Further, the court in *In re Ciccone*, 171 B.R. 4, 5 (Bankr.D.R.I.1994) could find

"no acceptable rationale for departing from the *MortgageAmerica* holding," despite *Colonial Realty*. It is further to be noted that in *Colonial Realty* the Second Circuit questioned only the rationale upon which *MortgageAmerica* was based; it agreed with the outcome in that case and reached the same outcome as *MortgageAmerica*, that the automatic stay of § 362 did apply. It reached that conclusion by finding § 362(a)(1)

### 2. Claims as Property of the Estate.

█ Next we consider whether the claims themselves being asserted by the plaintiffs in the Stelter litigation are property of the estate. In examining this question, we "must look to the nature of the wrongs alleged in the complaint", and we must do that "without regard to the plaintiff's designation." *In re Granite Partners,* 194 B.R. 318, 325 (Bankr. S.D.N.Y.1996). In the section of their complaint headed "General Allegations of Misconduct", plaintiffs at paragraph 61 said:

61. Upon information and belief, in or about April, 1995, Defendants Donald Swallen, Bruce Swallen, Dale Swallen, L. Joyce Pendleton, Yogis Burry, Inc., the Swallen Family Trusts, and Mars Partnership, Ltd. ("Mars") entered into transactions for the transfer of money and real estate which included the following:

(a) Defendants Donald Swallen, Bruce Swallen, Dale Swallen, L. Joyce Pendleton sold their shares of the Company's stock (and upon information and belief caused the sale of the stock held by the Company's Employee Stock Ownership Plan without the prior knowledge of the employee-shareholders) to Yogis Burry, Inc. and the Swallen Family Trusts.

(b) Upon information and belief, certain key real estate owned and held by Swallen's was transferred to Mars; Yogis Burry, Inc. and/or Swallen's received the proceeds from the sale of this property; and the proceeds were in turn used to purchase the shares of Defendants Donald Swallen, Bruce Swallen, Dale Swallen, and L. Joyce Pendleton. This was done in direct violation of their assurances that no shareholder would receive payment ahead of the debenture holders, and that the real estate served as protection for the value of Plaintiffs' and class members' investment.

(c) Upon information and belief, the parties to the transaction appear to have acknowledged that the transactions herein were fraudulent conveyances. In fact, part of the sale proceeds was placed into an escrow arrangement funded by a Letter of Credit in the approximate amount of $1,900,000 at Fifth Third Bank in Cincinnati, Ohio.

We find the following at paragraph 67 of the complaint:

67. Defendants induced Plaintiffs and class members to purchase and to hold onto Swallen's debentures by means of, at least, the following material omissions of fact:

(a) upon information and belief, the financial health of the Company was seriously in question as early as 1993 and continuing into 1994 and 1995;

(b) upon information and belief, the Company's shareholders were attempting to sell the Company as early as 1993;

(c) upon information and belief, the Company's shareholders were attempting to sell the Company throughout 1994;

(d) upon information and belief, serious negotiations for the sale of the Company to Yogis Burry, Inc. or its principals began during the second half of 1994;

(e) upon information and belief, Defendants had agreed in principal to the sale and purchase of the Company prior to December 29, 1994;

\*    \*    \*    \*    \*    \*

The complaint at paragraph 81 alleges:

81. Despite representations at various times by the Company's officers, directors and shareholders to Plaintiffs and class members that the Company maintained a collateral base that secured the value of the debentures, the Company's officers, directors and shareholders failed to maintain sufficient collateral or assets to secure the repayment of the debentures.

The complaint alleges at paragraph 85:

85. Despite assurances by the Company's officers, directors and shareholders assurances to Plaintiffs and class members that debenture holders would receive a return of their investment prior to the Company's shareholders receiving a distri-

applicable, accepting the analysis that a fraudulent transfer claim, though asserted against a third party, must also be interpreted as a claim against the debtor.

bution of their investment, Defendants Donald Swallen, Bruce Swallen, Dale Swallen, and L. Joyce Pendleton, as shareholders, received a substantial portion of the Company's value via the sale of the Company's key real estate and the sale of their stock, leaving little, if any, funds to protect and pay Plaintiffs and class members.

At paragraph 92, the complaint alleges:

92. Defendants had contractual, fiduciary and common law duties to fully and honestly disclose to Plaintiffs and class members all material facts concerning the financial status and viability of Swallen's, and the nature, extent and resulting impact of the contemplated and actual transactions through which Defendants Donald Swallen, Bruce Swallen, Dale Swallen, and L. Joyce Pendleton transferred the assets and control of Swallen's and its subsidiaries to Yogis Burry, Inc., the Swallen Family Trusts, and Mars.

It is appropriate now to recall for the reader the recitation above of the contents of the Settlement Agreement which the UCC has reached with the Swallen Family, a settlement with regard to "certain fraudulent conveyances and preferential transfers consummated shortly before the commencement of this Chapter 11 case." While respondents contend that the complaint in the Stelter litigation seeks relief of an entirely different character from that which the debtor could assert, in view of the allegations contained in the complaint, there is no question that the plaintiffs in the Stelter litigation are seeking redress for the very same acts which are the basis of the claims dealt with in the Settlement Agreement.

In *In re AP Industries, Inc.*, 117 B.R. 789 (Bankr.S.D.N.Y.1990), the court applied to the situation before it, language which fits precisely here:

The Defendants cavalierly state that § 362(a) of the Code is not implicated by the New York Actions because the suit seeks money damages from various non-debtor third parties and does not seek possession or control of any property of the Debtor's estate. The Defendants are gravely mistaken. This is precisely the type of activity and burden to the estate which § 362 of the Code was intended to alleviate. The New York Actions are a transparent attempt by the Defendants to "end run" the automatic stay. The actions constitute acts to exercise control over property of the estate in violation of § 362 of the Code.

*Id.* at 799.

Respondents in the Stelter litigation are pursuing money in the hands of the Swallen Family. Though they assert that they seek only damages, any recovery may well have to be paid out of the proceeds of the putative fraudulent transfers upon which debtor and the UCC base their claim against the Swallen Family. The Stelter litigation is violative of the spirit as well as of the letter of § 362. The court in *Colonial Realty* characterized that spirit well:

The purpose of the automatic stay is "to prevent a chaotic and uncontrolled scramble for the debtor's assets in a variety of uncoordinated proceedings in different courts. The stay insures that the debtor's affairs will be centralized, initially, in a single forum in order to prevent conflicting judgments from different courts and in order to harmonize all of the creditors' interests with one another." *In re Fidelity Mortgage Investors (Fidelity Mortgage Investors v. Camelia Builders, Inc.),* 550 F.2d 47, 55 (2d Cir.1976), *cert. denied* 429 U.S. 1093, 97 S.Ct. 1107, 51 L.Ed.2d 540 (1977); *see also In re AP Indus., Inc. (AP Indus., Inc. v. SN Phelps & Co.),* 117 B.R. 789, 798 (Bankr.S.D.N.Y.1990). ("The automatic stay prevents creditors from reaching the assets of the debtor's estate piecemeal and preserves the debtor's estate so that all creditors and their claims can be assembled in the bankruptcy court for a single organized proceeding.")

980 F.2d at 133.

We hold that the Stelter litigation is stayed by the operation of 11 U.S.C. § 362.

So Ordered.