## In re CINCOM iOUTSOURCE, INC., Debtor.

### No. 06–12778.

United States Bankruptcy Court,
S.D. Ohio,
Western Division.

Oct. 31, 2008.

---

Mark A. Greenberger, Cincinnati, OH, for Plaintiff.

Jason V. Stitt, Keating Muething & Klekamp PLL, Robert G. Sanker, Cincinnati, OH, for Defendant.

Cincom Systems Mauritius, Inc., pro se.

Cincom Systems India Private Limited, pro se.

Allserve Systems Corp., pro se.

Charles A. Stanziale, Jr., pro se.

James E. Burke, pro se.

**ORDER DENYING MOTION TO ENFORCE THE AUTOMATIC STAY, IN PART, UNDER § 362(a)(1) AND GRANTING THE MOTION TO ENFORCE THE AUTOMATIC STAY UNDER § 362(a)(3)**

JEFFREY P. HOPKINS, Bankruptcy Judge.

The chapter 7 trustee, Mark Greeberger ("Trustee"), filed a motion to enforce the automatic stay ("Motion") (Doc. 100) under § 362(a) of the Bankruptcy Code in three separate actions filed in federal district courts in New Jersey, California and New York. In two of these actions, the plaintiffs are suing Cincom Systems, Inc. ("Systems"), the parent company of the Debtor, Cincom iOutsource, Inc. ("iOutsource"), and in the forth action, a third party complaint was brought by the defendant against Systems. The Motion seeks a determination that the lawsuits should be stayed by the filing of the bankruptcy petition and the automatic stay. The Court notes that the Trustee has not sought an injunction pursuant to § 105(a) of the Bankruptcy Code enjoining further prosecution of the lawsuits mentioned, and no adversary proceeding has been instituted under Rule 7001(7) for that purpose.

A hearing on the Motion was held on September 9, 2008, at which time no live testimony was presented.[1] The Court will reference the facts suggested by the parties' pleadings and raised during the oral arguments, and will accept them as true

for purposes of deciding on the Motion, only. We will refer to the three plaintiffs and the third party plaintiff, hereinafter, as the Respondents.

This is a core is a "core proceeding" as defined in 28 U.S.C. § 157(b)(2)(A), (G) and (O).

*SUMMARY OF THE FACTS*

iOutsource is a tiered subsidiary of Systems. Systems and its related companies entered into multiple leases and contracts with lenders to provide computer call center equipment and software products. According to Respondents, much of the equipment that was leased or purchased under these agreements was either obsolete, never delivered or did not work as promised, which resulted in the filing of the lawsuits now in dispute. It is alleged that iOutsource and Systems participated in a scheme to defraud these lenders. Subsequently, Respondents sued Systems and iOutsource asserting causes of action under state law sounding in fraud and breach of contract. *See All Points Capital Corp. v. Cincom iOutsource, Inc. and Cincom Systems, Inc.,* Case No. 2:06–cv–03823 (E.D.N.Y.); *Citicapital Technology Finance, Inc. v. Cincom Systems, Inc. and Cincom iOutsource, Inc.,* Case No. 3:06–cv02389 (D.N.J.); *Universal Equipment Leasing Company, LLC v. Fifth Third Leasing Company v. Cincom Systems, Inc.,* Case No. 3:06–cv–07584 (N.D.Cal.). The Trustee contends that each of the Respondents'[2] lawsuits is stayed under § 362(a)(1)(action "against the debtor" or "to recover a claim against the debtor")

---

**1.** The parties created a confusing evidentiary record, if they created one at all. The Transcript from the California hearing on the motion to intervene filed by the Trustee was admitted over the hearsay objection of UEL See Doc. 145. The parties also filed several exhibits and affidavits prior to the hearing. But no one moved for the admission of any of the exhibits. It appears that the Trustee assumed that all of the exhibits filed with the Court formed part of the record. See Doc. 135.

**2.** The latter action against Systems is the third party complaint previously referenced.

and (3)(act "to obtain possession of property of the estate" or "to exercise control over property of the estate"). We are asked by the Chapter 7 Trustee to enforce the automatic stay to prevent further prosecution of the lawsuits pending the Trustee's performance of his prescribed duties under § 704(a)(1) of the Bankruptcy Code.

The Trustee asserts that iOutsource was the alter ego of its parent, Systems; that iOutsource and Systems' affairs were so "intertwined" that a judgment against Systems is, in effect, a judgment against iOutsource; and that a judgment against Systems will interfere with iOutsource's right of indemnification against Systems and possibly obstruct iOutsource's right of recovery of any preferences or fraudulently transferred funds held on account by Systems. The Trustee's adversary complaint against Systems [3] filed in this Court seeks relief under the following counts: (1) declaratory judgment of alter ego; (2) breach of fiduciary duty to debtor; (3) breach of fiduciary duty to creditors; (4) fraudulent transfers; (5) liability of directors and shareholders for unlawful distributions; (6) preferential transfers; (7) unjust enrichment/constructive trust; and (8) attorney fees. The complaint also seeks a determination that Systems be found liable for all the debts of iOutsource. It further seeks the imposition of a constructive trust upon "the Debtor's assets" in the possession of Systems.

### LAW & ANALYSIS

The Trustee's Motion to enforce the stay in the three pending lawsuits references decisions that stay non-bankruptcy litigation against non-debtor entities based upon various statutory provisions. The Court will examine each of those Code sections in turn.

### I. 11 U.S.C. § 362(a)(1)

#### A. Acts Against the Debtor

■ The Sixth Circuit has made it abundantly clear that the § 362(a)(1) stay of acts "against the debtor" is to be strictly construed. In *Patton v. Bearden,* 8 F.3d 343 (6 th Cir.1993), the partners of a debtor partnership attempted to use the automatic stay as a sword to stop non-bankruptcy litigation against them as individuals. Rejecting the argument, the Sixth Circuit stated:

> Clearly, section 362(a)(1) stays any actions against the *debtor* . . . .
>
> . . . The stay does not extend . . . to separate legal entities such as corporate *affiliates,* partners in debtor partnerships or to *codefendants* in pending litigation.

*Id.* at 350 (emphasis added).

Based upon *Patton,* we conclude that the actions filed by Respondents against Systems and Fifth Third Leasing Company ("Fifth Third") do not constitute acts "against the debtor" or an "act to recover a claim against the debtor" that are stayed by § 362(a)(1).

### II. 11 U.S.C. § 105(a)

■ Our discussion turns next to the third party complaint Fifth Third filed against Systems in California district court. After being sued over its role in assigning UEL rights to a series of alleged sham leases and contracts, Fifth Third filed a third party complaint against Systems for fraud and breach of contract, among other claims. There is no dispute among the parties that the automatic stay

---

**3.** Also named as defendants are four other entities alleged to be wholly owned subsidiaries of Systems. These are Cincom Systems Mauritius, Inc., Cincom Systems International Operations, Inc., Cincom Systems India Private Limited and Allserve Systems, Inc.

applies to iOutsource. However, the dispute in this instance arises because the Trustee (joined not surprisingly by Fifth Third) wishes to see the entire lawsuit in California district court stayed, including the action by UEL against Fifth Third.

Relying on *A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994 (4th Cir.1986), the Trustee contends that § 362(a)(1) "extends to nonbankruptcy claims against non-debtors where there is such 'identity between the debtor and the third party defendant that the debtor may be said to be the real party defendant' or 'a judgment against the third-party defendant will in effect be a judgment or finding against the debtor.'" Motion at 7.

The Sixth Circuit addressed this issue in *Patton*.

> It should be noted that such extensions, although referred to as extensions of the automatic stay, were in fact injunctions issued by the bankruptcy court after hearing and the establishment of unusual need ... to protect the administration of the bankruptcy estate.

*Patton*, 8 F.3d at 343. *Patton* concluded that such relief is really a request for injunctive relief under § 105(a). *Id.; see also In re National Century Fin. Enters., Inc.*, 423 F.3d at 567, 579 (6th Cir.2005) ("only when the bankruptcy court enjoins an action under § 105(a) must it consider the four preliminary injunction factors, and apply a standard of clear and convincing evidence").

A request for injunctive relief must be brought by adversary proceeding. *See* Fed. R. Bankr.P. 7001(7); *see also In re Swallen's, Inc.*, 205 B.R. 879, 880 (Bankr. S.D.Ohio 1997) (denying motion for § 105(a) injunctive relief for failure to seek such relief by adversary proceeding); *accord National Century Fin. Enters., Inc.*, 423 F.3d at 579 ("Normally, a debtor initiates an adversary proceeding in order to request a § 105(a) preliminary injunction."). Even if such relief was available through motion practice, the Trustee failed to present any evidence at the hearing, let alone clear and convincing evidence.

Were these the only arguments for extension of the stay advanced by the Trustee in the Motion, our work would be done. Each of the lawsuits which the Trustee seeks to enforce the stay against would be allowed to proceed without further delay. However, the Trustee also raises the specter that these lawsuits are stayed under § 362(a)(3) which cabins creditor actions "to obtain possession of property of the estate or to exercise control over property of the estate."

III. 11 U.S.C. § 362(a)(3).

A. Acts to Exercise Control Over Property of the Estate

The Trustee also contends that Respondents are asserting causes of action in their complaints that constitute acts "to exercise control over property of the estate," in violation of § 362(a)(3).

1. Claims and Defenses in Other Actions as Property of the Estate

■ The Trustee argues strenuously that the bankruptcy petition filed by iOutsource stays all "nonbankruptcy claims for additional causes of action pursued by the trustee on behalf of creditors including ... breach of fiduciary duty to debtor and/or creditors, trust fund, and fraudulent transfers." Motion at 10–11. The Trustee, apparently, contends that UEL's lawsuit against Fifth Third is so "inextricably intertwined" with claims he is attempting to recover in the bankruptcy court litigation against Systems as to constitute an act "to exercise control over property of the estate." Moreover, the Trustee asserts that Systems and iOutsource are indispensable

parties to the California litigation and that any verdict rendered in that case may have preclusive effect upon claims or defenses that belong to the bankruptcy estate. Accordingly, the Trustee seeks to have all litigation in the California district court frozen under § 362(a)(3).

■ In this situation, the Sixth Circuit has stated that the focus of the inquiry under § 362(a)(3) is on whether a judgment against the solvent codefendants would actually deplete the bankruptcy estate. *National Century,* 423 F.3d at 579 (*citing, Patton* 8 F.3d at 349). With that standard in mind, we must examine the UEL claims asserted against Fifth Third to see whether, if judgment is rendered in favor of UEL, it would deplete the iOutsource bankruptcy estate of property.

The gravamen of the complaint UEL filed in the California litigation alleges that "[Fifth Third] breached its fiduciary duty to UEL." UEL seeks to recover damages and to obtain a declaratory judgment based on Fifth Third's "breach of contract and warranty, negligent actions and breach of fiduciary duty in connection with brokering, selling and assigning UEL over $16 million in telephone call center equipment and third-party leases associated with that equipment." See Doc. 79 at E. 26. However, this claim has nothing to do with Systems' alleged duty to iOutsource or iOutsource's creditors.[4] We do not think that UEL's prosecution of this lawsuit against Fifth Third, a non debtor, in any way implicates estate property or usurps the Trustee's ability to pursue the various claims he is asserting against Sys-

tems in bankruptcy court. We note also that the Trustee has not brought any actions against Fifth Third.

The only impact that may affect the bankruptcy estate, as far as we can determine, is one that was well intended by Congress. Fifth Third, to its credit, has already taken advantage of it. Fifth Third has filed a proof of claim in the bankruptcy case. Under these circumstances, it is difficult for us to see how a judgment against Fifth Third, if the UEL complaint is successful, will have an effect on property of the estate that is forbidden under the Bankruptcy Code. Fifth Third must answer for its own conduct in the California litigation surrounding these transactions. Whether Fifth Third has to pay UEL damages under the applicable law resulting from the lease assignments is a question for determination by the district court in California.[5] *In re Nat'l Staffing Servs., LLC,* 338 B.R. 35, 38 (Bankr.N.D.Ohio 2005) ("The concerns of the Debtor are valid: duplicative suits may occur. Yet, this does not form a pretext for affording to [the non-debtor defendants] the benefit of a § 105(a) injunction.")

The Trustee also cites our decision in *Gainesville Venture, Ltd.,* 159 B.R. 810 (Bankr.S.D.Ohio 1993)(Sellers, J.) for the proposition that defenses which Fifth Third might raise in the California litigation belong to the estate. He contends that these defenses "simply cannot be properly decided with the Debtor in the 'empty chair' and the Trustee in abstention." Motion at 19. The Trustee's reliance on *Gainesville* is misplaced. That

---

**4.** The Trustee has asserted these claims in his complaint against Systems.

**5.** We previously granted the Trustee's request for the appointment of special counsel to seek leave of the District Court in the Northern District of California to intervene in that litigation. *See* Doc. 86. The decision whether

Systems and iOutsource are indispensable parties under Fed.R.Civ.P. 19, and whether that lawsuit should proceed or be dismissed rests entirely with the District Court. *See Bedel v. Thompson,* 103 F.R.D. 78 (S.D.Ohio 1984)(Porter, J.).

case involved a suit by a creditor against a limited partner of the debtor-partnership who was attempting to assert a derivative defense that belonged to the estate of the debtor-partnership. There, the court reasoned that the stay applied to the non-bankruptcy litigation because the defense the limited partner wanted to assert was property of the partnership's bankruptcy estate. *See Gainesville*, 159 B.R. at 812 (*citing Griffin v. Bonapfel* (*In re All American Ashburn, Inc.*), 805 F.2d 1515, 1518 (11 th Cir.1986) (shareholder derivative suit enjoined from going forward because the cause of action belonged to the estate)).

The relationship between iOutsource and Fifth Third is not one that lends itself to a similar determination. Fifth Third and iOutsource are separate, unaffiliated companies who entered into and, then, were supposed to perform distinct obligations under the parties' various agreements. Unlike *Gainesville*, Fifth Third has no derivative defense to assert that can be said to belong to the bankruptcy estate of iOutsource. Neither is this situation analogous factually to the one in *Patton* where the stay was extended to halt nonbankruptcy litigation because of its negative impact on the estate. An entry of judgment against Fifth Third would not necessarily impair the debtor's rights against one of its general partners or affiliated entities, thus making it less likely that that partner or affiliate would be able to make a contribution to pay the debtor's creditors. *See Patton*, 8 F.3d at 349; *also see Eagle–Picher Industries, Inc.*, 963 F.2d 855, 863 (6 th Cir.1992) (state court actions against co-defendant officers of the debtor were stayed because the interests were inextricably intertwined and the impact on the debtor's reorganization efforts and the distribution to creditors was tangible). At best, Fifth Third may be able to seek contribution or indemnification from

Systems if found to be liable under its agreements with UEL. Under these circumstances, the Sixth Circuit has determined that injunctive relief under § 105(a) is required and it can only be obtained in rare cases when "absolute indemnity by the debtor on account of any judgment that might result against [the defendant] in the case" occurs. *See In re National Staffing Services, LLC*, 338 B.R. 35, 38 (Bankr.N.D.Ohio 2005) (*quoting In re Eagle–Picher Industries, Inc.*, 963 F.2d at 861).

We do not think that the automatic stay under § 362(a)(3) extends to all of the litigation in the California district court. We conclude that a potential judgment against Fifth Third, a solvent entity, does not actually deplete the bankruptcy estate of property by depriving the Trustee, in this case, of any claims or defenses he might want to assert in the bankruptcy litigation. We believe this decision finds ample support in the Sixth Circuit:

> [n]othing in the legislative history counsels that the automatic stay should be invoked in the manner which would advance the interests of some third party, such as the debtor's co-defendants, rather than the debtor, or its creditors. This court concurs with the district court's conclusion that "it would distort congressional purpose to hold that a third party solvent co-defendant should be shielded against his creditors by a device intended for the protection of the insolvent debtor" and creditors thereof.

*Lynch v. Johns–Manville Sales Corp.*, 710 F.2d 1194, 1197 (6th Cir.1983); *See also Id.* at 1199 ("[D]uplicative or multiple litigation which may occur is a direct by-product of bankruptcy law. As such, the duplication, to the extent that it may exist, is congressionally created and sanctioned.").

Accordingly, UEL's lawsuit against Fifth Third is not stayed by § 362(a)(3).

#### 2. Alter Ego Claims

The Trustee also argues that he alone is permitted to assert claims against Systems based on an alter ego theory. With the exception of Fifth Third, however, none of the other Respondents premise liability upon the alter ego doctrine, Fifth Third's breach of contract and fraud claims asserted in the third party complaint allege that Systems is liable through the acts of its subsidiary iOutsource under the "alter ego" theory.

Following the hearing on the Motion, the Court directed the parties to brief the following issue:

> Whether the holding of *Spartan Tube and Steel, Inc. v. Himmelspach (In re RCS Engineered Prods. Co., Inc.)*, 102 F.3d 223 (6 th Cir.1996) would have been different if analyzed under Ohio law, in light of *Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Cos., Inc.*, 67 Ohio St.3d 274, 617 N.E.2d 1075 (Ohio 1993). In particular, is there a meaningful distinction between the elements of an alter ego claim under Ohio law, set forth in *Belvedere*, and the elements of an alter ego claim under Michigan law, set forth in *Nogueras v. Maisel & Assocs. of Michigan*, 142 Mich.App. 71, 86, 369 N.W.2d 492, 498 (Mich.App. 1985) and cited in RCS Engineered Prods.?

See Doc. 144. In his response, the Trustee never mentions Nogueras nor does he compare it to *Belvedere*. See Doc. 157. We posit that this is so, perhaps, because there is little, if any, distinction between Michigan and Ohio law regarding the elements of the alter ego doctrine or its similar application by the courts in these two states.

 As noted by the Sixth Circuit, whether a particular cause of action is available to the debtor, and thus constitutes "property of the estate," is determined by state law. *RCS*, 102 F.3d at 225 (*citing Butner v. U.S.*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979)). A threshold question this Court must resolve, pertaining to whether the § 362(a)(3) automatic stay should be construed as a restraint on Fifth Third's ability to prosecute claims sounding in tort and breach of contract against Systems, concerns whether under Ohio law a subsidiary can sue its parent company predicated on an alter ego theory.

Two courts, including a very well regarded judge from our court, interpreting Ohio law have reached the conclusion that a subsidiary does have standing to assert alter ego claims against a parent under Ohio law. *See St. Paul Fire and Marine Ins. Co. v. PepsiCo, Inc.*, 884 F.2d 688, 703–704 (2nd Cir.1989)("Nothing in modern Ohio law indicates that a corporation may not bring an action against its parent on an alter ego theory. We believe that under Ohio law, a corporation would be able to assert an alter ego cause of action against its parent corporation. The cause of action therefore becomes property of the estate of a bankrupt subsidiary, and is property asserted by the trustee in bankruptcy."); *also see In re Lee Way Holding Co.*, 105 B.R. 404, 410–12 (Bankr.S.D.Ohio 1989)[6] and *In re Lee Way Holding Co.*, 120 B.R. 881 (Bankr.S.D.Ohio 1990).[7]

---

**6.** Far from being an endorsement of the views expressed by the *Lee Way* Court, as the Trustee contends, the Sixth Circuit, in *RCS*, was merely acknowledging that at least one court had held that a subsidiary has standing to assert alter ego claims against a parent under Ohio law.

**7.** The question whether a subsidiary could bring an alter ego claim against its parent

Even when *Lee Way* and *PepsiCo* were decided nearly two decades ago, those courts expressed healthy scepticism about whether their interpretation of Ohio law was correct, given that there were no Ohio cases directly on point. In the time that has elapsed since then, we have received no clearer guidance from the Ohio Supreme Court, and none of Ohio's lower courts have had to grapple squarely with the question of whether a subsidiary may bring an alter ego action against its parent.

If faced with this issue now, we believe that the Ohio Supreme Court, though not bound by the holding of the Sixth Circuit in *RCS*, would, nonetheless, reach the same conclusion under Ohio law that the Sixth Circuit did when interpreting Michigan law on the application of the alter ego doctrine. To begin with, the courts in both states apply the alter ego doctrine with great reluctance when being asked to disregard a corporation's separate identity. Moreover, at no time have the courts in either of the two states ever permitted its use by a subsidiary in order to bring a claim against its parent corporation. Both Ohio and Michigan courts recognize that application of the alter ego doctrine is an exception to the fundamental rule of corporate law that normally shareholders, officers, and directors are not liable for the debts of the corporation. *See E.S. Preston Assocs., Inc. v. Preston*, 24 Ohio St.3d 7, 492 N.E.2d 441 (1986); *Nogueras*, 369 N.W.2d at 498.

In *Belvedere*, the Ohio Supreme Court adopted the Sixth Circuit's interpretation of Ohio law, settling a long running dispute among Ohio's appellate courts on whether the alter ego doctrine could be asserted. *Belvedere*, 67 Ohio St.3d at 288–89, 617 N.E.2d 1075 (citing *Bucyrus–Erie Co. v. General Products Corp.*, 643 F.2d 413 (6th Cir.1981)). After surveying Ohio case law, the Sixth Circuit held that alter ego could be raised at any time it could be proven that the corporation was being used to commit criminal or wrongful acts, not just when the corporation was formed for this purpose. *Id.* In so holding, the Sixth Circuit articulated three elements needed to establish the alter ego doctrine which the Ohio Supreme Court later adopted in Belvedere. We can find no meaningful distinction in the articulation and application of the alter ego doctrine between Michigan and Ohio courts.[8] *See RCS*, 102 F.3d at 226 (*citing Nogueras*, 369 N.W.2d at 498).

---

arose in this case and was certified to the Ohio Supreme Court. Our research indicates that no decision was ever published on the certified question by the Ohio Supreme Court.

8. In *Dombroski v. WellPoint, Inc.*, 119 Ohio St.3d 506, 895 N.E.2d 538 (2008), the Ohio Supreme Court recently modified its holding in *Belvedere*. In *Belvedere* the Court had held that to pierce the corporate veil under the alter ego doctrine and hold individual shareholders liable for wrongs committed by the corporation, plaintiffs had to show proof of three elements: (1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own, (2) control over the corporation by those held liable was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity, and (3) injury or unjust loss resulted to the plaintiff from such control and wrong. *See Belvedere*, 67 Ohio St.3d at 289, 617 N.E.2d 1075. In *Dombroski*, the court held: "To fulfill the second prong of the *Belvedere* test for piercing the corporate veil, the plaintiff must demonstrate that the defendant shareholder exercised control over the corporation is such a manner as to commit fraud, an illegal act, or a similarly unlawful act." *Dombroski*, 119 Ohio St.3d 506, 895 N.E.2d 538 at syllabus. The alter ego rule under Michigan law, in our view, is very similar to Ohio's law even with the recent modifications. First, the corporate entity must be a mere instrumentality of another entity or individual. Second, the corporate entity must be used to commit a fraud or wrong. Third, there must have been an un-

Given the Sixth Circuit's analysis in *RCS*, and the Ohio Supreme Court's historical respect for our circuit court's interpretation of Ohio law, we think that were that Court ever asked to grant standing to a subsidiary to sue its parent, it would flatly reject that invitation. In reaching this conclusion, we note that the elements under Michigan and Ohio law concerning the alter ego doctrine are virtually indistinguishable. Further, when the doctrine has been invoked by plaintiffs, courts in both states have applied it in a similar manner, limiting its use to third parties who have asserted it to pierce the corporate veil in order to reach shareholders committing wrongful acts.[9] What must not be lost in these discussions is that the alter ego doctrine is not itself a cause of action, but rather it is the rare exception that offers a plaintiff standing to disregard the corporate form in order to reach the shareholder, officer, director or principal of the corporation which wrought an injustice against that person. *Belvedere*, 67 Ohio St.3d at 287, 617 N.E.2d 1075. A subsidiary is not the sort of plaintiff that Ohio courts have traditionally cloaked with the authority to assert claims against its parent predicated upon an alter ego theory. *See Dombroski*, 119 Ohio St.3d 506, 895 N.E.2d 538, 542–43 ("Shareholders may thus be held liable for their own bad acts notwithstanding the protections afforded by the corporate form when they use the corporation 'for criminal or fraudulent purposes' to the detriment of a *third party*.") (emphasis added) (citing *Belve-*

*dere*, 67 Ohio St.3d at 287, 617 N.E.2d 1075). In light of this, we are reluctant to extend the alter ego rule to a lawsuit by a subsidiary—or in this case the Trustee standing in those shoes—against the parent without clearer suggestion from the Ohio Supreme Court.

Because we have determined that Ohio laws does not allow a subsidiary to sue its parent company under the alter ego doctrine, the Fifth Third alter ego claim against Systems is not property of the estate under § 541(a)(1) that the Trustee alone may assert. *See RCS*, 102 F.3d at 227. That, however, does not end the inquiry under § 362(a)(3) as to whether the action is stayed.

B. Acts to Obtain Possession of Property of the Estate

Separate from the alter ego theory, the Trustee also contends that each Respondent's lawsuit against Systems, including the third party complaint filed by Fifth Third, constitutes an act "to obtain possession of estate property" or to "exercise control over property of the estate" in contravention of § 362(a)(3). The Trustee cites two decisions that warrant discussion.

a. *National Century*

In *In re National Century Fin. Enters., Inc.*, 423 F.3d 567 (6th Cir.2005), one of the debtors' creditors ("Amedisys") filed a non-bankruptcy suit against a bank ("JP Morgan") to recover, pursuant to a con-

---

just loss or injury to the plaintiff. *Nogueras*, 369 N.W.2d at 498.

9. *See Mathias v. Rosser*, IAP–768, 2002 WL 1066937 (Ohio Ct.App. May 30, 2002) (*citing Winston v. Leak*, 159 F.Supp.2d 1012, 1017–1018 (S.D.Ohio 2001)) (One distinct difference between the Ohio and Michigan law regarding the alter ego doctrine is the concept of reverse corporate veil piercing. Ohio courts follow the majority rule which does not

recognize the doctrine of reverse corporate veil piercing. Even though Michigan has embraced the reverse piercing doctrine, it has been applied sparingly and only in situations where a corporation has used it to defend against claims asserted by third parties seeking to penetrate the veil of a subsidiary to reach the parent.). *See RCS*, 102 F.3d at 226–227.

structive trust theory, funds in a JP Morgan account titled in the name of one of the debtors. The Sixth Circuit concluded that the suit violated § 362(a)(3) because Amedisys was trying to obtain property of the estate.

The instant case is distinguishable from *National Century*. In *National Century*, Amedisys attempted to obtain possession of specific property in which the debtor possessed at least a legal interest on the petition date. This is distinguishable from the Respondents' suits to collect money, in general, from Systems under various state law theories of recovery. Respondents do not seek specific property held by Systems in an account that was titled to iOutsource on the petition date. Unlike *National Century*, it will not be necessary for us to determine ownership of any specific funds being held on account. We believe the holding in *National Century* is inapposite to the facts presented in this case.

### b. *Swallen's*

In *In re Swallen's*, 205 B.R. 879 (Bankr. S.D.Ohio 1997) (Perlman, J.), debenture holders of the debtor ("Stelter Plaintiffs") filed a non-bankruptcy suit in state court against certain individuals and trusts that allegedly benefitted from the sale of their stock in the debtor ("Swallen Family"). In the bankruptcy case the unsecured creditors' committee ("UCC") reached a settlement agreement with the Swallen Family, representing the avoidance of certain fraudulent and preferential transfers, and afterwards sought to enforce the automatic stay against the Stelter Plaintiffs in the state court action.

Relying on *In re MortgageAmerica Corp.*, 714 F.2d 1266 (5 th Cir.1983), the court determined "that funds in the hands of putative fraudulent transferees are property of the estate." *Swallen's*, 205 B.R. at 882. Holding that § 362(a)(3) stayed the Stelter Plaintiffs, the court reasoned:

> [Stelter Plaintiffs] are pursuing money in the hands of the Swallen Family. Though they assert that they seek only damages, any recovery may well have to be paid out of the proceeds of the putative fraudulent transfers upon which debtor and the UCC base their claim against the Swallen Family.

*Id.* at 884.

After carefully parsing the averments asserted in the Stelter (state court) complaint and then comparing it to the UCC's fraudulent transfer suit asserted under bankruptcy law and the settlement agreement reached in the bankruptcy case, the *Swallen's* court ruled:

> While respondents contend that the complaint in the Stelter litigation seeks relief of an entirely different character from that which the debtor could assert, in view of the allegations contained in the complaint, there is no question that the plaintiffs in the Stelter litigation are seeking redress for the very same acts which are the basis of the claims dealt with in the Settlement Agreement.

*Id.* at 884.

In the instant case, the Trustee's adversary complaint against Systems seeks to avoid alleged fraudulent and preferential transfers. If the *Swallen's* analysis is correct, then § 362(a)(3) would stay the Respondents' actions against Systems.[10] In reaching this determination, both *Swal-*

---

10. The *MortgageAmerica* holding relied upon by *Swallen's* has been recently criticized and called into question by several courts and commentators. However, because we are bound by Sixth Circuit precedent, and the principles of *stare decisis,* we are obliged to follow *Swallen's* which appears to state the minority view.

In *MortgageAmerica,* a creditor of the debtor brought a non-bankruptcy suit against an

*len's* and *National Century* instruct us to examine closely the contents of the non-bankruptcy complaint for incidents of similarity with the claims the trustee is asserting in the bankruptcy litigation.

With the exception of UEL's suit against Fifth Third pending in California district court, our review of the remaining complaints (including the third party complaint) filed against Systems leads us to the firm belief that Respondents are seeking relief based on claims that are of the very same character and nature as those asserted by the Trustee. Fifth Third, for example, alleges that Systems and its alter ego companies breached their contracts, committed fraud and engaged in various sorts of tortuous conduct for which they should be required to pay monetary damages. See Doc. 79 at Ex. 30. Similarly, the complaint filed by All Points Capital Corp. contends that Systems and its related entities committed tortuous acts within the State of New York by submitting a fraudulent invoice and making fraudulent statements causing All Points, among other allegations, to be defrauded, either intentionally or negligently, of well over one million dollars. See Doc. 79 at Ex. 16. Finally, in the New Jersey suit, the plain-

tiff there, CitiCapital Technology Finance, Inc., seeks monetary damages against Systems on the basis of breach of contract, fraud and civil conspiracy among other claims. See Doc. 79 at Ex. 21. CitiCapital is asking for a judgment of nearly six million dollars against Systems in the New Jersey action.

The complaints filed by the Respondents that are now pending in federal district courts in New York, New Jersey and California (including the third party action) seek redress for the very same acts which form the basis of the claims dealt with in the Trustee's complaint. Counts IV and V of the Trustee's adversary complaint filed in the bankruptcy court assert traditional claims under §§ 548 and 544(b) seeking recovery of estate property fraudulently transferred to Systems and its related companies over the course of iOutsource's dealings with those entities. The state law causes of action asserted in the Trustee's adversary complaint mirror to these claims. Count VI asserts a claim well known in bankruptcy practice for a preference. In essence, it asserts that Systems was an insider, that Systems received transfers from iOutsource purportedly on account of antecedent debts within the

---

individual that controlled the debtor. Among others, the complaint contained a count to recover fraudulent transfers. The Fifth Circuit concluded that the action was stayed by § 362(a)(3) because equity dictates that property alleged to have been fraudulently transferred by a debtor, although in the possession of the transferee, remains property of the estate under § 541(a)(1).

The Second Circuit disagreed with this conclusion in *In re Colonial Realty Co.*, 980 F.2d 125 (2nd Cir.1992). *Colonial Realty* reasoned that *MortgageAmerica* renders meaningless § 541(a)(3) (property of the estate includes "[a]ny interest in property that the trustee recovers"). Therefore, fraudulently transferred property does not become property of the estate until recovered.

*Colonial Realty*, perhaps, represents the better statutory interpretation. It also repre-

sents what appears to be the growing majority position among courts. *See In re Fehrs*, 391 B.R. 53, 72 (Bankr.D.Idaho 2008); *see also* Michael R. Cedillos, Note, *Categorizing Categories: Property of the Estate and Fraudulent Transfers in Bankruptcy*, 106 Mich. L.Rev. 1405 (May, 2008) (examining both decisions and their progeny, concluding that Colonial Realty represents the better statutory analysis).

We note that Colonial Realty, nonetheless, agreed with the conclusion of MortgageAmerica that a non-bankruptcy fraudulent transfer action was stayed by § 362(a). The Second Circuit based this conclusion on § 362(a)(1) instead of § 362(a)(3). It concluded that the assertion of a non-bankruptcy fraudulent transfer action was tantamount to an action "to recover a claim against the debtor," such action being stayed by § 362(a)(1).

statutory preference period, that iOutsource was insolvent at the time the transfers occurred, that Systems and its related companies received more than they would in a distribution under chapter 7 and that, therefore, the transfers constitute avoidable preferences under § 547.

The Sixth Circuit has cited with approval In re MortgageAmerica Corp., stating: "Any effort to recover [fraudulently transferred] property is essentially an action to recover property that belongs to the debtor, *In re MortgageAmerica Corp.*, 714 F.2d 1266, 1275 (5th Cir.1983).... Thus, property fraudulently conveyed and recoverable under Bankruptcy Code provisions remains property of the estate[.]" *Nat'l Labor Relations Board v. Martin Arsham Sewing Co.*, 873 F.2d 884, 887 (6th Cir. 1989).[11]

Because the transfers that the Trustee seeks to avoid arise from virtually the identical acts which form the bases of the claims dealt with in lawsuits filed by the Respondents that are now pending in the New York, New Jersey and California federal courts [12] and because any recovery that Respondents receive may well have to be paid out of the proceeds of the putative fraudulent transfers and preferences upon which the Trustee bases his claims against Systems and its related companies, the automatic stay under § 362(a)(3) stays those actions (including the third party action) from further prosecution.

## IV. Conclusion

The Court concludes that §§ 362(a)(1) and (3) do not stay UEL's lawsuit against

---

**11.** There are questions surrounding whether the cited language from the Sixth Circuit's opinion in *Arsham* is non-binding *obiter dicta*.

In *Arsham*, the National Labor Relations Board ("NLRB") was a creditor of the Martin Arsham Sewing Company ("MARSCO"). In 1979, the NLRB determined that MARSCO owed $41,677.31 in back pay for labor law violations. On December 12, 1981, the directors of MARSCO, sole shareholder Martin Arsham ("Arsham") and his wife, transferred all MARSCO property to Arsham. Eighteen days later, MARSCO filed a bankruptcy petition. On April 1, 1982, Arsham sold all of the former MARSCO property for $20,000. The MARSCO bankruptcy estate was closed on January 18, 1983, apparently as a no-asset case. After the case closed, General Counsel for the NLRB filed a motion before the NLRB to hold Arsham personally liable for the back pay, but only to the extent of the $20,000 Arsham received from the sale of MARSCO property. General Counsel acknowledged that Arsham was not an alter ego of MARSCO. Thereafter, Arsham was found to be personally liable for the MARSCO obligation to the extent of $20,000.

The issue came before the Sixth Circuit when the NLRB sought to enforce the order imposing liability on Arsham. Arsham argued that the NLRB was precluded from recovering from him personally because it

failed to challenge the transfer of the MARSCO property in the bankruptcy case. The Sixth Circuit agreed, holding that "the [NLRB's] failure to pursue its remedy in the Bankruptcy Court precludes it from attempting to impose derivative liability upon Arsham by attacking as unlawful the conveyance from MARSCO to Arsham." *Id.* at 888.

*Arsham* may be distinguishable. Unlike *MortgageAmerica* or *Colonial Realty*, the Sixth Circuit was not presented with the question of whether the automatic stay applied to non-bankruptcy litigation. In Arsham, there was no need to decide this issue because MARSCO's bankruptcy case was already closed. The stay was no longer in effect. See § 362(c)(1) & (2). A different issue was presented: whether post-bankruptcy litigation initiated by a creditor from the bankruptcy case was barred under a preclusion theory based on the creditor's failure to take action during the pendency of the bankruptcy case.

That said, our reading of *Arsham*, and the court's reasoning behind it, leads us to conclude that the Sixth Circuit favors the *MortgageAmerica* court's approach. Until Sixth Circuit rules differently on this question, we are obligated to follow what we believe is the law in this Circuit.

**12.** This is distinct from UEL's action against Fifth Third.

Fifth Third; that because they are acts to exercise control over property of the estate or to obtain possession of property of the estate, Respondents' lawsuits currently pending against Systems in New York, New Jersey and California (Fifth Third's third party complaint) are stayed under § 362(a)(3); and, that an injunction of UEL's lawsuit against Fifth Third is not warranted because it would be premature given that the Trustee has failed to file an adversary proceeding to ask for relief under Rule 7001(7).

For the foregoing reasons, the Motion is hereby **DENIED,** in part, and **GRANTED** in part.